McDONNELL *v.* CENTRAL OF GEORGIA RAILWAY CO.

118 86|
Case 3
122 699|

Applying the rules laid down in the Civil Code, §§ 2611, 2612, in reference to·
suits against masters other than railroad companies, to the facts of the pres-
ent case, the court erred in granting a nonsuit. The evidence authorized a
finding that the defendant was negligent in reference to the machinery fur-
nished upon which the servant was at work at the time of his death, and that
the defects in the machinery were of such a character that the defendant ought

to have known of them and have given warning to the servant in respect thereto, as well as a finding that the servant did not know of the defects and had not equal means with the master of discovering the same, and was not required to make an inspection or examination to discover the defects, and therefore was not lacking in ordinary care in proceeding to work upon the machinery without making an inspection or examination.

Argued May 1, — Decided May 30, 1903.

Action for damages. Before Judge Felton. Bibb superior court. January 20, 1903.

*Ross & Grace*, for plaintiff.

*Lawton & Cunningham, Hall & Wimberly*, and *J. E. Hall*, for defendant.

COBB, J. The plaintiff brought her action against the defendant company for damages for the homicide of her husband, who was a machinist in its employment. He was killed by the explosion of the boiler of a locomotive in the shops of the defendant. The locomotive had been in the shops for several days undergoing repairs, and was not in use as a locomotive at the time the boiler exploded; steam having been generated simply for the purpose of aiding in making the necessary repairs. At the conclusion of the evidence for the plaintiff the court granted a nonsuit, and the plaintiff excepted. It is contended that the plaintiff is not entitled to the benefit of the presumption of negligence authorized by the Civil Code, §2321, because the homicide was not the result of "the running of the locomotives, or cars, or other machinery," or of the act of "any person in the employment or service" of the company. While there are numerous cases in which it may appear that the court has dealt with the law embraced in this section of the code as applicable to suits for injuries received by or for the homicide of employees of railroad companies, occasioned in the manner stated in the section, there are several rulings to the effect that the provisions of this section are not applicable in any suit for injuries to or the homicide of such an employee. *W. & A. R. Co.* v. *Vandiver*, 85 *Ga.* 471.; *Georgia R. Co.* v. *Hicks*, 95 *Ga.* 302 (2), 305; *Fla. C. & P. R. Co.* v. *Burney*, 98 *Ga.* 1; *Port R. & W. C. R. Co.* v. *Davis*, 103 *Ga.* 579; *Augusta So. R. Co.* v. *McDade*, 105 *Ga.* 135 (6), 138; *W. & A. R. Co.* v. *Jackson*, 113 *Ga.* 356; *Atlantic & B. R. Co.* v. *Reynolds*, 117 *Ga.* 47. It is also contended that there is nothing in the Civil Code, § 2297, which declares that as

railroad "companies necessarily have many employees who can not possibly control those who should exercise care and diligence in the running of trains, such companies shall be liable to such employees as to passengers, for injuries arising from the want of such care and diligence," which would authorize a presumption of negligence to arise in favor of the plaintiff, for the reason that the husband of the plaintiff was not killed by the running of trains, and that there was no presumption at common law in favor of passengers except where the injury or death resulted from the running of trains. In other words, the contention is that the case of the plaintiff is not brought within any of the statutory provisions of this State which modify the common law relating to master and servant with respect to suits against railroad companies. It is of course admitted that under the law of this State the common-law rule which prohibited one servant from recovering from the master for injuries received as a result of the negligence of a fellow-servant is not applicable in any case where the master is a railroad company, whether the injury results from the running of trains or otherwise. *Thompson v. Railroad Co.*, 54 *Ga.* 509 (1); *Georgia Railroad* v. *Ivey*, 73 *Ga.* 499 (1); *Georgia Railroad Co.* v. *Brown*, 86 *Ga.* 320; *Ga. R. Co.* v. *Miller*, 90 *Ga.* 571 (1); *Ga. R. Co.* v. *Hicks*, 95 *Ga.* 301 (1); *Southern Ry. Co.* v. *Johnson*, 114 *Ga.* 329 (1).

It is contended, though, that this modification of the common-law doctrine has no application to the present case, it not being claimed that the homicide of the plaintiff's husband was the result of the negligence of a fellow-servant. It is claimed by the defendant that its liability is to be determined in this case solely by the law of master and servant as it existed at common law. For the purposes of this case, this will be conceded to this extent, that is, that the liability of the company is to be determined by the general law of master and servant, as it is found in the code, applicable to cases where the master is other than a railroad company. The duties of a master other than a railroad company are laid down in section 2611, which is as follows: "The master is bound to exercise ordinary care in the selection of servants, and not to retain them after knowledge of incompetency; he must use like care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. If there are latent defects in machinery, or dangers in-

cident to an employment, unknown to the servant, of which the master knows or ought to know, he must give the servant warning in respect thereto." Section 2612 provides: "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by the preceding section, it must appear that the master knew or ought to have known of the incompetency of the other servant, or of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof." The section just quoted purports to be a codification of the rules laid down in the cases of *McDonald* v. *Eagle Mfg. Co.*, 68 *Ga.* 842, *Georgia Railroad Co.* v. *Nelms*, 83 *Ga.* 75, and *Davis* v. *Augusta Factory*, 92 *Ga.* 713; and the rules laid down in the last two cases are taken from Wood's Law of Master and Servant. Under this section of the code, in suits for injuries arising from dangers which are unknown to the servant, in order to authorize a recovery by the servant, or in a suit for his homicide, it is necessary that two things should appear — first, that the master knew or ought to have known of the danger to which the servant was exposed, and, second, that the servant did not know of such danger, and had not equal means with the master of knowing it, and by the exercise of ordinary care could not have known thereof. In other words, as it is sometimes expressed it is incumbent upon the servant to show, not only "negligence on the part of the master," but also "due care on his own part." *Brush Electric Co.* v. *Wells*, 103 *Ga.* 515 (1); *McDaniel* v. *Acme Brewing Co.*, 113 *Ga.* 80. If the servant shows that the machinery he was furnished to work with or upon was in a defective condition, and that work with or upon such machinery subjected him to danger, he has carried the burden required by law, so far as proving the master negligent is concerned. But this alone will not authorize a recovery; for if he knew of the danger and nevertheless continued to work, or if he had equal means with the master of discovering the danger, any injury resulting to him would be the result of his own fault. *W. & A. R. Co.* v. *Bishop*, 50 *Ga.* 465, 473; *Johnson* v. *Railroad Co.* 55 *Ga.* 133; *Bell* v. *W. & A. Railroad*, 70 *Ga.* 566; *Atlanta & Charlotte Ry.* v. *Ray*, Id. 674; *Central Railroad* v.

*Haslett,* 74 *Ga.* 59 (5) ; *Smalls* v. *Ry. Co.,* 115 *Ga.* 137 ; *Stewart* v. *Ry. Co.,* Id. 624.    When the servant has shown that he did not know of the defects and did not have equal means with the master of discovering the same, and could not have discovered them by the exercise of ordinary care, he has established a prima facie right to recover, if he has also carried the burden of showing negligence on the part of the master in furnishing the machinery.

Let these principles be applied to the facts of the present case. The husband of the plaintiff was employed as a machinist in the shops of the defendant.    It was his duty to do work of a certain character upon locomotives which were brought into the shops for repairs.    It was no part of his duty to inspect the boiler of a locomotive upon which he was placed at work, or to make any examination of the boiler to ascertain its condition before beginning work upon the engine.    He had been placed at work upon a locomotive which had been in the shops for several days for the purpose of undergoing repairs, and had left it with the fire banked the evening before the homicide.    The last seen of him before the explosion of the boiler he was going through the shops in the direction of the roundhouse where the locomotive was ; apparently with the intention of resuming work thereon.    His body was found in the debris of the locomotive, and a jury would be authorized to find from the evidence that he had reached the locomotive before the explosion and was engaged on it in the work required of him, that is, adjusting what is called in the evidence the " pop-valve."    The evidence authorized a finding that the boiler was in a very defective condition, a large number of stay-bolts being found broken after the explosion and in such a condition that these breaks must have existed before the explosion.    The evidence disclosed a condition of affairs which would authorize a jury to find that the boiler was in a dangerous condition, entirely too dangerous for use.    The defects in the boiler were shown to be of such a character that an inspection would have disclosed them, and from the evidence it is to be inferred that the character of the defects was such that they must have existed for some time.    It is to be inferred that the work in which the plaintiff's husband was probably engaged at the time of his death rendered it usual, proper, and necessary that the engine should be heated and the boiler filled with steam.    While the evidence is voluminous, what is above stated is the substance of the

material parts. Under these circumstances was the plaintiff entitled to have a jury pass on her case? Has she carried the burden which the law imposes upon one suing for the homicide of an employee? There can be no question that there was sufficient evidence to authorize a jury to find negligence on the part of the defendant, so far as the condition of the boiler was concerned. It is unnecessary to determine whether the doctrine of res ipsa loquitur applies, but see the following cases: Illinois Central R. Co. v. Houck, 72 Ill. 285; Dunlap v. Steamboat Reliance, 2 Fed. 249; Robinson v. Railroad Co., 20 Blatch. 338; The Reliance, 4 Wood's C. C. Rep. 420; Ill. Cen. R. Co. v. Phillips, 19 Ill. 234. As boilers properly constructed and properly used do not generally explode, the explosion of a boiler would seem to be evidence of negligence in some one. It may have been that of the boiler-maker, or of the one whose duty it was to inspect the boiler before using it, or of the one who was using the machinery to which the boiler was attached. It would seem, therefore, that while the mere explosion of a boiler would raise a presumption of negligence of some one, it would not necessarily be evidence of negligence on the part of the owner of the boiler. As we say, however, no decision as to this need be made in this case. There was evidence authorizing a finding that the defendant was negligent in furnishing such a boiler for use by an employee either at work with or upon the machinery with which it was connected. The evidence also authorized a finding that the company ought to have known of the defective condition of the boiler.

The plaintiff has therefore successfully carried the burden which the law imposed upon her, of showing that there was a latent danger to which her husband was exposed, and which the company ought to have known of before placing her husband at work upon the locomotive, and about which it was its duty to warn him. Her right to recover, therefore, is dependent upon whether she has successfully carried the second burden which the law imposes upon her. Does the evidence show that her husband did not know of the condition of the boiler, and did not have equal means with the company of discovering it, and could not by the exercise of ordinary care have known of it? Want of knowledge on the part of the servant as to the defects in the machinery may be shown by circumstances as well as by direct evidence. Of course, in a case like the present, where the servant loses his life, it is impossible in a

suit by his widow to show by direct evidence this want of knowledge. If the circumstances are such that it can be reasonably inferred that the servant did not have knowledge, this inference from the facts sufficiently establishes want of knowledge. The evidence shows that the plaintiff's husband was not required, under the terms of his employment, to inspect or examine the boilers of locomotives upon which he was placed at work. If it was not his duty to make an inspection of the boiler, then he was not lacking in diligence if he went to work upon the engine without examining into the condition of the boiler. He had a right to rely upon the obligation which his employer was under to furnish him safe machinery to work with, so far as latent defects were concerned. He was placed at work upon the engine by his employer, he had worked upon it several times before his death, the last seen of him he was making his way toward the house where the engine was situated, presumably with the intention of resuming work on it, and a jury could find that he was at work on the engine at the time of his death. A jury would be authorized to find that the plaintiff's husband did not know of the defects in the boiler. Not being required to inspect boilers, not having any one at his command to make an inspection, and not being himself an inspector of boilers, he had not equal means with the company of knowing of the defective condition of the boiler. We do not mean to say he would have been under a duty to inspect if he had been a professional inspector of boilers, but the fact that he was not such an inspector is an additional reason why he had not equal means with the master of discovering the defects. The boiler was shown to be in such a defective and dangerous condition that no sensible man would have used it for the purpose for which the plaintiff's husband used it, if he had known of its condition ; and the mere fact that he went to work upon the engine is itself evidence of want of knowledge on his part as to its condition. This of itself would be sufficient to shift the onus upon the company to show that he did have knowledge. There being evidence authorizing a finding that the company was negligent where it ought to have been diligent, and that the plaintiff's husband was not negligent as to any matter about which the law required him to be diligent, the plaintiff was entitled to have her case submitted to a jury. We do not mean, of course, to hold that the evidence demands a finding in her favor ; but after a thorough review of the ev-

idence, we think it was sufficient to authorize a recovery. If at another trial the evidence is substantially the same as that contained in the present record, the case should be submitted to a jury under proper instructions. On the record now before us we are clear that the court erred in granting a nonsuit.

*Judgment reversed. By five Justices.*