23436. GRAY, receiver, *v.* GARRISON, administratrix.

DECIDED SEPTEMBER 17, 1934.

*Wheeler & Kenyon,* for plaintiff in error.

*Sam Kimzey, Arnold, Gambrell & Arnold,* contra.

GUERRY, J. Mrs. Fannie Garrison, administratrix of the estate of her deceased husband, Odell Garrison, brought suit against J. F. Gray, receiver of the Tallulah Falls Railway Company, for the homicide of her husband, who was employed by the defendant as a bridge workman and who was killed in the course of his employment while attempting to step from a motor-car on which he was

riding, to a trailer attached to the car, in order to arrange some tools and timbers on the trailer which were in danger of falling off and possibly causing derailment. The action was brought under the Federal employer's liability act and resulted in a verdict for the plaintiff. It was alleged in the petition that while going to his work on the car, to which were attached two trailers containing certain tools and three pieces of twelve by twelve bridge timbers twelve feet long, he saw that the timbers and certain of the tools had become misplaced and were about to fall off the trailers, there being no standards or anything else to hold them on the cars, and the roughness of the track and the speed of the motor-car were causing them to become misplaced, and in this emergency, and in order to avoid injury to himself and the remainder of the crew on the motor-car, nine in number, he undertook to prevent the accident and to recover a shovel which was about to fall on the tracks. He recovered the shovel and undertook to replace the lumber and pull it back in position on the trailer to prevent hitting the cuts in the railroad, "and, while in the act of trying to get the timber back in place, slipped and fell between the motor-car and trailers, and the wheels of both trailers passed over the body of deceased, . . causing instant death." The alleged negligence of the defendant consisted in the facts that the cross-ties were rotten and uneven and the joints of the rails were uneven, causing the road to be very rough; that the road-bed was not properly balanced and tamped, and the uneven condition of the track caused the timbers to slip and the tools to become misplaced and liable to fall from the car; that it was negligent also to undertake to haul long timber of this character on two trailers without having any standards or other means by which to hold the timber in place, and in so running the motor-car as to make the timber liable to strike the bank of the cuts through which the track passed, said cuts being very close to the rails, and in not observing the lumber and stopping the motor-car and replacing the lumber, and in undertaking to transport a crew of nine hands on said motor-car with not enough room for them to remain in safety. By amendment another count was added, alleging the same facts as in count one and alleging further that while the deceased was in the act of arranging said timbers on the trailer, the trailer itself became derailed, and the decedent, because of his efforts to replace said articles, the tools

and timbers, was caused to be thrown between the cars and killed. The same acts of negligence as in the first count were alleged, and it was further alleged that the flanges of the wheels of the trailer were rough and uneven and out of condition, and such condition, in connection with the defective track, was the cause of the derailment.

The evidence introduced was in sharp conflict. Pitts, a witness for the plaintiff, testified: "I saw the man that fell standing up with one foot on the motor-car and the other foot on the flat car that was just behind the gasoline car, and the flat car next to the gasoline car or lever car, jumped the track, and the man standing there went down between the two cars when that car left the track. I can't tell just what he was doing, but it looked to me like he was reaching around something, or stooping over, trying to get hold of something, when it jumped the track." This witness also testified that the cross-ties along this particular place looked to be in bad shape and rotten, and that you could hear the rail joints crack when trains passed, and that when trains passed along this particular point, witness noticed that they jumped up and down. He testified that the track at this point was not ballasted at all, that it just had dirt under the ties. Another witness testified as follows: "I have noticed trains going over the place of this accident before, and along there they would go up and down, and kinder jump up and down and jolt. I had been up there three or four months before this happened, and I noticed that condition and the effect on the trains that passed over there." Witnesses for the defendant testified that the motor-car and the trailers were properly loaded and being handled in a proper manner, at a speed of about twelve miles per hour, which was a safe and customary speed; that the load was not unusual or too heavy; that the motor-car and the trailers were in good condition and the track at this point was in good condition; that at the point of the accident the track was ballasted with cinders, and the cross-ties were sound, and the rails and joints in good condition at the place and time of the accident; that the first trailer never left the track, and only the second trailer left the track; that when the motor-car stopped in about sixty feet both the motor-car and the first trailer were still on the track. Two of the witnesses testified that if the deceased had not left his place on the motor-car, no injury would have occurred. An eye-witness for the defendant testified: "I was looking back at the time the

accident happened and saw Mr. Garrison get up and step on the motor-car and trailer, and laid one of the shovels back and attempted to move the twelve by twelve, which had slid from the place where we put it, and in making this attempt to do that he went down. . . The front trailer ran over him, but it didn't derail it, but the rear trailer derailed, but I don't know whether he caused it to derail or not. . . After he fell I felt a jerk, but I didn't feel any jolt or jerk before he fell in between the cars at all. The first jolt I felt was after he fell. . . When we got stopped the motor-car or the first trailer was not derailed, but the second trailer was derailed. We ran about two rail-lengths from Mr. Garrison's body before we stopped. . . Those two shovels appeared to be about to fall when Mr. Garrison reached for them, and he reached down and got them and put them back. I saw him do that. After he did that there was a twelve by twelve on the trailer that had jolted out of its place a little, and he got his hand on the timber and made an attempt or two to pull it back in place, and to pull it toward the center of the car, to get it straight, as it had gotten out of line to some extent, and about that time he fell, or somewhere along in there he fell. I didn't see either one of the cars jump the track. I saw the load on the trailers rise up and the tools rise up after he fell. That all happened in almost a second. Not over two or three seconds. . . I remembered I holloaed. The trailer had not jumped the track when I holloaed. I holloaed before the trailer jumped the track. When I holloaed to Mr. Fulton [the operator of the motor-car], Mr. Garrison had fallen between the cars then." The foreman of the company of men in charge of this crew of which the deceased was a member and who was operating the motor-car testified: "The regulations of the company is that no man is to ride on the cars standing while in motion, under any condition, and I had given those instructions to my crew and told them to not get on trailers or cars, or ride on them, while in motion at all, and they were instructed to let me know as soon as anything started to fall off and I would stop the car and straighten it back; and I told them not to get on the cars or trailers while moving, and if any tools started to fall off, they were to notify me and I would stop and put them back on. I had given those instructions to my crew time and again. It was in violation of my instructions for any member of my crew to stand, sit, or be

in any position on the trailers while in motion, and if any man stepped on a trailer while in motion, stand on it or get in any position on it while in motion, it was in violation of my instructions." There was evidence from others of the crew on the motor-car that these instructions had been given to them, although there was no direct testimony that such instructions had been communicated to the deceased. He had been in the employ of the defendant for some years preceding the accident. It was shown on cross-examination of the foreman that the first trailer had jumped the track at another place some months prior to this time and killed another man.

■ We do not think the court erred in overruling the demurrer or in allowing the amendment. Assuming, for the sake of the argument, that there was not enough in the first count to make the petition good in substance, there was enough in the first count to show "that according to the original design of the pleader, what is offered to be added rightly belongs to the cause of action which he meant to assert, and that the addition proposed would make the cause of action complete. There must be a plaintiff, a defendant, jurisdiction of the court, and facts enough to indicate and identify some particular cause of action as the one intended to be declared upon so as to enable the court to determine whether the facts proposed to be introduced by the amendment are part and parcel of the same cause." *Ellison* v. *Georgia Railroad &c. Co.*, 87 *Ga.* 691 (13 S. E. 809). The cause of action alleged was the homicide of the plaintiff's husband by means of defendant's negligence. The allegations in the declaration touching the specific acts of negligence and the manner of causing death may be varied or added to by amendment at any time during the progress of the trial, so as to adapt the pleadings to the evidence in all its aspects. There was enough in the original declaration to amend by, and the amendment did not introduce a new cause of action. *Harris* v. *Central Railroad*, 78 *Ga.* 525 (3 S. E. 355).

■ Section 51 of U. S. Code Annotated (the Federal employer's liability act) is as follows: "Liability of common carriers by railroad, in interstate or foreign commerce, for injuries to employees from negligence. Every common carrier . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . for such injury or death result-

ing in whole or in part from the negligence of any of the officers, agents, or employees of such carriers, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." Section 53 of said act is as follows: "Contributory negligence; diminution of damages. In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages for personal injuries to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee; provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." The doctrine of the assumption of the risk was available as a complete defense, since an employee assumes the ordinary risks and hazards of his occupation, and also those risks which are known to him, or which are plainly observable, even though due to the master's negligence and no presumption of negligence existed against the defendant. *Southern Ry. Co.* v. *Simmons,* 24 *Ga. App.* 96 (100 S. E. 5) ; *Southern Ry. Co.* v. *Blackwell,* 20 *Ga. App.* 630 (93 S. E. 321).

■ Contributory negligence and assumption of risk are closely related and may often overlap, but they are not identical. In *Brown* v. *Rome Machine & Foundry Co.,* 5 *Ga. App.* 142 (62 S. E. 720), Powell, J., delivering the opinion of the court, said: "The assumption of the risk by the servant is a matter purely of contract, and is governed by the canons of contract. Contributory negligence is a matter relating solely to torts, and is governed by the principles peculiarly applicable to that branch of jurisprudence." Negligence may arise and be evidenced by a breach of a duty. The defendant in this case owes to the plaintiff the duty of furnishing to him safe appliances and a safe place to work. A violation of this duty may constitute negligence. A corresponding duty on the part of the plaintiff to the defendant, such as minimizing the damages when apparent and the avoidance of the danger when possible, may, when there is a breach of the duty,

result in such contributory negligence on the part of the servant as will under the Federal liability act diminish the damage occasioned by the plaintiff, in proportion to the amount of negligence between the plaintiff and the defendant. Assumption of the risk arises out of contract which may be implied from the conduct of the plaintiff, which of itself may amount to a waiver of the duty owing by the defendant to the plaintiff. Quoting further from the *Brown* case, supra: "These implied obligations and assumptions which the law adds to the express agreements in all contracts are familiar to lawyers and laymen alike; they are simply inferences which the courts draw from the transaction, on the ground that the parties naturally must have intended them. . . Confronted with the proposition of being required to work under an unsafe system, at an unsafe place, with incompetent fellow servants, or with unsafe instrumentalities, the servant would have the right of abandoning the contract and suing the master for breaching it as to this material, though implied, portion of it. However, if he knows the actual condition of things, when he contracts, or if he subsequently discovers it, he may not choose to refuse to work; the doing of the work may be such a privilege that he is willing to take the chances of getting hurt, so that he in the one case, by actually contracting with knowledge of the danger, or in the other case, by refusing to abandon after knowledge, and thereby waiving the master's breach, raises an implied agreement against himself that he will not hold the master to the obligation of furnishing any safer place, ways or work, servants, or appliances than what already he sees to exist,— or, as we say in juridic terminology, he assumes the risk of the delinquencies,—and thereafter the law reads this implied agreement or assumption on his part into the contract of employment, as a part of it."

The court in the present case properly instructed the jury as to the risks assumed by the servant, which risks are incidents of his employment and normally and necessarily a part thereof, as well as those risks not necessarily a part thereof, and those risks not necessarily incident to the contract assumed and for which the law raises no presumption of waiver until they have been discovered. In ground 4 of the motion for new trial complaint is made that the court erred in charging the jury as follows: "The defendant further claims that the decedent met his death as the result of risks

assumed by him in the service of the defendant. You will consider this contention, in the light of the instructions which the court has given you upon the subject of assumed risk. The jury are instructed that the doctrine of assumption of the risk does not apply unless the employee both knows and appreciates and understands the danger from the fixed or other conditions, such as the condition of a track or a loaded car, which is the alleged source of danger. Knowledge and appreciation of danger are indispensable to a servant's assumption of risk of injury." In ground 6 complaint is made that the court erred in charging the jury as follows: "The employee does not assume the risk of death or injury where the same results in whole or in part from the negligence of the officers, agents, or employees of the defendant receiver, and if the death of the decedent occurred in whole or in part from the negligence of the officers, agents, or employees of the defendant in any of the particulars as set forth in either count of this petition, then the plaintiff in this case can recover such damages as you shall assess under the rules upon that subject given you by the court." We think the exceptions to these charges of the court are well taken. The court had previously instructed the jury on the subject of assumed risk as follows: "There are certain risks of employment which an employee assumes, in entering the employment, and if the injury results from some of these assumed risks, then there is no liability for such injury on the part of the employer. The employee in this case, being Odell Garrison, and the employer referred to being Mr. Gray, the receiver of the Tallulah Falls Railway. An employee assumes the risks of such dangers as are normally and necessarily incident to the occupation, whether he is aware of them or not. A risk of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work or suitable and safe appliances for the work. These the employee is not treated as assuming, until he becomes aware of the defect or disrepair and of the risk arising from it, unless the defect and risk alike are so obvious that any ordinarily prudent person, under the circumstances, would have observed and recognized it. An employee does not, however, assume the risk of conditions of which he is not aware, or which, in the exercise of ordinary care, he could not have discovered." We think the charges excepted to unduly limited the

conditions from which or by which the servant may be held to have known and understood the risks. The charge limits his knowledge to the condition of the track or the loaded car. The charge was applicable if the jury accepted the contention of the plaintiff that the condition of the road-bed and wheels of the trailer alone caused the accident, but it limited the jury to this contention alone and was not cured by the charge as a whole. If the defendant "slipped and fell" as alleged in the first count, it is not applicable. If the trailer did not become derailed by the alleged rough and uneven tracks and its own defective wheels, the charge, standing alone, does not fully cover the case. The defendant's witnesses are in sharp conflict with this theory of the plaintiff, and the charge practically eliminated any assumption of risk which might be shown by defendant's evidence. It was a question for the jury to determine whether the servant by leaving his seat on the motor-car and stepping across to another car that had no seats or railings, being a flat car that was at the time, according to the petition, in rapid motion, assumed the risk of being thrown from the car and injured thereby. The jury might consider in this connection the question of emergency, if such there was. It is true that the servant could not assume a risk of defects in the condition of the flat car or its wheels, or of the unevenness of the track, unless he had actual knowledge thereof, but he may assume known or obvious risks, such as standing on a rapidly moving flat car.

■ If such known unsafe condition arises suddenly so as to create an emergency or necessity for action on the part of the servant, and it becomes imperative that he make a choice thereunder because of such emergency, such choice becomes imperative and the doctrine of implied assumption does not and will not apply, and the servant's failure on such emergency to exercise the best judgment will not necessarily be imputed against him as negligence. The existence of an emergency and the necessity for action thereunder is a question to be solved by the jury. See, in this connection, *Smith* v. *Wrightsville & Tennille R. Co.*, 83 *Ga.* 671 (10 S. E. 361) ; *Dabbs* v. *Rome Railway & Light Co.*, 8 *Ga. App.* 350 (69 S. E. 38).

■ An employee of a railroad company engaged in interstate commerce who was killed while engaged with others in repairing a bridge on the line of a road over which such commerce was carried on was at the time employed in interstate commerce, within

the meaning of the Federal employer's liability act, and an action for his death may be maintained thereunder. Pederson *v.* D., L. & W. R. Co., 229 U. S. 146 (33 Sup. Ct. 648, 57 L. ed. 1125); Grand Trunk Ry. of Canada *v.* Knapp, 233 Fed. 950.

■ The requests to charge set out in the 19th and 20th grounds of the motion for a new trial were proper and pertinent under the pleadings and evidence in this case. The very question to be decided in this case is whether the plaintiff was killed because of the negligence of the defendant or because of his voluntary and unnecessary assumption of a post of danger. The language of these requests was especially appropriate. The principle requested was not clearly covered by the charge as a whole, and the defendant was entitled to have the jury instructed on this particular phase of the case.

■ Grounds 5 and 7 of the motion for a new trial are without merit. Grounds 9 to 16 inclusive are not well taken. Taken in connection with the remainder of the charge, there was no intimation or expression of an opinion by the trial judge that the plaintiff should recover. Exceptions taken in the 17th, 18th, 21st, and 22d grounds are without merit. The defendant having introduced evidence as to the condition of its equipment, the plaintiff on cross-examination was entitled to thoroughly sift the witness and develop any facts that might tend to show a contrary state of facts. The judge therefore did not err in admitting the evidence complained of in the 23d and 25th grounds. Ground 24 is likewise without merit. Judgment is reversed and the case remanded for another trial for the reasons announced in the 3d and 6th divisions of this opinion.

*Judgment reversed. MacIntyre, J., concurs. Broyles, J., disqualified.*