## 47233. MATHIS-AKINS CONCRETE BLOCK COMPANY, INC. v. TUCKER.

EVANS, Judge. William W. Tucker was employed by a detective agency as night watchman of the premises of Mathis-Akins Concrete Block Co., Inc. He filed suit against the owner of the premises, and alleged that he had suffered personal injuries when he fell into a pit on defendant's premises, which pit was maintained by defendant between two railroad tracks on said premises; that defendant never warned or told plaintiff of the pit; that plaintiff never saw it prior to his injury; that his work on the premises was as night watchman during the hours of darkness; that each time he had ever had occasion to look in that direction prior to his injury, said pit had been covered by a hopper-car standing over the pit between the tracks; that there were no lights or warning signs giving notice of the dangerous condition; that on the night of his injury he was requested by members of a train crew to render assistance as to an obstruction on the railroad tracks in this vicinity. The time was about 3:00 a.m., during 24-degree weather; he approached the obstruction with his light shining upon the obstruction, and fell into the pit, which had been left on this night *without a hopper-car over it.* He had no previous knowledge of the existence of the pit, and all of this caused him to fall into it.

The defendant answered, denying the material portions of the complaint and contended generally that plaintiff's alleged injury resulted from his own negligence; that he assumed the usual and ordinary risks of employment about the premises; that he failed to exercise ordinary care, skill, and diligence to protect himself from a risk which should have been known to him.

The case proceeded to trial; verdict and judgment were rendered for the plaintiff, and defendant filed its motion for judgment notwithstanding the verdict, predicated on its prior motion for directed verdict made at the close of the

evidence, and, in the alternative, moved for a new trial. The motion was amended, heard and overruled. The defendant appeals. *Held:*

1. After verdict the evidence is construed in its light most favorable to the prevailing party, and every presumption and inference is in favor of the verdict. *Boatright v. Rich's,* 121 Ga. App. 121 (173 SE2d 232). Questions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for a jury, and a court should not attempt to take the place of the jury in solving them except in plain and indisputable cases. *Peck v. Baker,* 76 Ga. App. 588 (1a) (46 SE2d 751); *Brown v. Iocovozzi,* 117 Ga. App. 693, 694 (161 SE2d 385); *Hanchey v. Hart,* 120 Ga. App. 677, 679 (171 SE2d 918).

2. It was for jury determination as to whether the defendant had equal knowledge with the plaintiff, and as to whether or not plaintiff's own negligence contributed in any way to the mishap. The evidence did not demand a finding for the defendant.

The plaintiff was not the servant of the defendant. *Code* § 66-303 and such cases as *Ludd v. Wilkins,* 118 Ga. 525 (45 SE 429); *Holman v. American Auto Ins. Co.,* 201 Ga. 454, 460 (39 SE2d 850); *McDonnell v. Central of Ga. R. Co.,* 118 Ga. 86, 89 (44 SE 840); *Crown Cotton Mills v. McNally,* 123 Ga. 35 (3) (51 SE 13); *Taff v. Harris,* 118 Ga. App. 611 (2) (164 SE2d 881) do not apply. We cannot state, as a matter of law, that the evidence here shows the hazard was so obvious that plaintiff could not recover.

3. The contention of the defendant that the court erred in charging "mantrap" or "pitfall" is not meritorious. Although the evidence was conflicting, it was ample on plaintiff's part to show a pitfall. See *Harvill v. Swift & Co.,* 102 Ga. App. 543, 546 (117 SE2d 202); *Rogers v. Bragg,* 117 Ga. App. 295 (160 SE2d 217).

4. There is no merit in the contention that the trial judge charged incorrectly as to assumption of risk. The language charged is authorized by *Roberts v. King,* 102 Ga.

App. 518, 521 (116 SE2d 885). Further, the objections made at the trial were quite vague, and contended the judge had improperly charged plaintiff's request, while the enumeration of errors proceeds on another theory, to wit, that the trial judge erred in omitting to charge certain legal principles.

5. During the examination of the witness Dougherty, defendant's office manager, counsel for defendant attempted to show by his testimony, from examination of the invoices, that there were no cars over the hopper on certain dates. On objection, the court refused to allow the witness to answer whether or not, from his examination of the business records, same showed a loaded car not to be present on certain dates. The witness had no knowledge as to whether a car, loaded or unloaded, was over the hopper on these occasions. The invoices could not enable the witness to provide the answer, as said records simply showed date of delivery of the cars onto the yard, date of unloading and release, *but did not show the date or dates when said cars were placed over or removed from over the hopper.* The court did, however, allow the introduction into evidence of said invoices, for such light as they might shed on the question at issue. The court did not err in sustaining the objection to the testimony of the witness on this point.

6. Defendant complains because the court would not allow, over timely objection, the testimony of its agent, Dougherty, as to the relationship between the defendant and the detective agency which employed plaintiff. Objection was made upon the ground that the contract was in writing, and that it was the highest and best evidence on the question. Counsel for defendant said he anticipated that plaintiff's counsel would object to the contract, but was immediately, by said counsel, informed that they would not object to it. There was no error in sustaining the objection to the testimony.

7. We have considered each alleged error enumerated, and find no error; the judgment must be affirmed.

*Judgment affirmed. Quillian and Clark, JJ., concur. Pannell and Deen, JJ., concur specially. Bell, C. J., Hall, P. J., Eberhardt, P. J., and Stolz, J., dissent.*

ARGUED MAY 22, 1972—DECIDED NOVEMBER 14, 1972—
REHEARING DENIED DECEMBER 5, 1972—

*Anderson, Walker & Reichert, Mallory C. Atkinson, Jr., Albert P. Reichert,* for appellant.

*Neal D. McKinney, Richard B. Thornton, Tilman E. Self,* for appellee.

DEEN, Judge, concurring specially. The plaintiff here is a night watchman employed by Burns Detective Agency under contract with the defendant. In the course of his duties the plaintiff was walking over the defendant's premises when he fell into a hole, the existence of which was unknown to him but had been placed there by the defendant. It was nighttime and there was no light or warning of the existence of the hole.

I agree with what is held in the majority opinion. Additionally, insofar as the duty of care owing to. the plaintiff, and the issue of contributory negligence, are concerned, a jury question on simple negligence should have been submitted to the jury under the decision in *Wakefield v. A. R. Winter Co.,* 121 Ga. App. 259 (174 SE2d 178), where the plaintiff was an employee of a subcontractor and the circumstances of his fall through an open stairwell in daylight were held insufficient to support a summary judgment in favor of the defendant builder. If this is true, the jury instruction on mantraps and pitfalls discussed in the third division of the opinion actually puts a greater burden on the plaintiff to show wilful misconduct than the law requires, and if error would be harmless to the defendant. A dangerous hole on premises where there is no warning of any kind may, under the decision in *MacKenna v. Jordan,* 123 Ga. App. 801 (182 SE2d 550), constitute "a hidden peril, mantrap or pitfall." Also see *Burton v. Western & A. R. Co.,* 98 Ga. 783 (25 SE 736) and *Central of Ga. R. Co. v.*

*Ledbetter,* 46 Ga. App. 500 (168 SE 81). If the plaintiff was not, as a night watchman on the premises, an invitee, he was at the very least a licensee whose presence would be anticipated, and "it is usually wilful or wanton not to exercise ordinary care to prevent injuring a licensee who is reasonably expected to be within the range" of a dangerous instrumentality. *Murray Biscuit Co. v. Hutto,* 119 Ga. App. 377, 386 (167 SE2d 182), and see *Patterson v. Thomas,* 118 Ga. App. 326 (163 SE2d 331).

As to Division 4, I agree that the charge on assumption of risk was correct as given. To assume a risk of danger involves volition—the decision to take the risk after it is known, not simply negligence in failing to take precautions by means of which it could have been discovered. Negligence in failing to discover a danger is one thing; negligence in failing to avoid it after it is discovered is another, and assumption of risk generally refers only to the latter. "One who knowingly and voluntarily takes a risk to his person, the danger of which is so obvious that the act of taking such risk in and of itself amounts to a failure to exercise ordinary diligence for his own safety cannot hold another liable for damages for injuries thus occasioned." *Smith v. American Oil Co.,* 77 Ga. App. 463 (2a) (49 SE2d 90); and see *S. C. Jones Co. v. Yawn,* 54 Ga. App. 826 (1) (188 SE 603). This is not contrary to what is held in *Gray v. Garrison,* 49 Ga. App. 472, 480 (176 SE 412). That was a master and servant case which points out that the servant assumes the risks naturally and normally incident to his occupation, whether known or not, in an action against the master, but not those arising from failure to keep the premises safe, which latter he does not assume until he becomes aware of the defect or disrepair. One remaining exception is where the defect is so obvious that one could not help but be aware of it, in which case knowledge of its existence is in effect presumed, but that is not the case here.

I am authorized to state that Judge Pannell concurs in this special concurrence.

STOLZ, Judge, dissenting. I concur in the majority opinion

with respect to Divisions 1, 2, 5 and 6. I must respectfully dissent as to Divisions 3 and 4, and the conclusion reached in Division 7.

1. With respect to Division 3, the trial judge gave the following charge to the jury: "Under the law one of the duties owed by an owner of land is to refrain from maintaining any perils in the nature of pitfalls or mantraps. In contemplation of law, such a situation may result from the knowledge on the part of the owner of the existence of a dangerous or hazardous condition coupled with a conscious indifference to the consequences so that a deliberate intent to inflict injury is inferable, or a dangerous condition hidden with sufficient cover to obscure it or to render it unobservable to one who approaches it in which the hazard is laid or concealed. In other words, a pitfall or mantrap may consist of any hazardous or dangerous condition which is known to the owner and which is so located that he should reasonably anticipate that others might be injured by it.

"If the jury should find in this case that the situation constituted a hidden peril which amounted to in your opinion a pitfall or mantrap within the meaning of the rules of law given you in this charge and that such was the proximate cause of the plaintiff's injuries, then he would be entitled to recover provided he is not precluded from recovery by some other rule of law given or to be given you in this charge."

The evidence showed that the plaintiff fell into a "feeder hopper" located under and on both sides of a railroad sidetrack on the defendant's premises; the "feeder hopper" was approximately 4 feet wide, 12 feet long and varied in depth from 13 inches to 26 inches; it was a necessary, normal, routine piece of equipment used in defendant's business and was of proper design.

While the plaintiff alleged that "a make-shift cover had been placed over it," there was no evidence to substantiate this allegation. The "feeder hopper" was designed to facilitate the unloading of railroad cars delivering materials to the defendant's plant.

For an excellent discussion of the law relating to pitfalls

and mantraps, together with many citations giving most pertinent illustrations thereof, see: *Crosby v. Savannah Electric &c. Co.,* 114 Ga. App. 193, 198 (150 SE2d 563), where it was said in part: "The doctrine of mantrap and pitfall is rested on the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to do him injury [cit.]. A typical example is the setting of a spring or trap gun to stop or prevent depredations by animals or humans, as in *Wilder v. Gardner,* 39 Ga. App. 608 (147 SE 911). In that situation the owner expects that a trespasser [someone] will come, and *deliberately* sets a trap *designed* to do injury. [Emphasis supplied.] It may result from the knowledge on the part of the owner of the existence of a dangerous or hazardous condition coupled with a conscious indifference to the consequences, so that a deliberate intent to inflict injury is inferable [cit.]; or from a dangerous condition hidden with sufficient cover to obscure it or to render it unobservable to one who approaches it. [Cits.]. The hazard is latent or concealed."

It cannot be said that the evidence showing that it was dark when the plaintiff's injury occurred, satisfies the requirements regarding pitfalls and mantraps. See *Todd v. Armour & Co.,* 44 Ga. App. 609 (162 SE 394); *Baxley v. Williams Construction Co.,* 98 Ga. App. 662, 669 (106 SE2d 799).

Since there was no evidence to support the allegations of the complaint regarding a pitfall or mantrap, the court erred in giving the charge above quoted. *Owens v. White,* 103 Ga. App. 459 (1) (119 SE2d 581).

2. With respect to Division 4, the judge charged the jury: "Now a servant or contractor assumes the ordinary risk of his employment and is bound to exercise his own skill and diligence to protect himself and in cases of injury it must appear that the servant or contractor did not know of the danger and did not have equal means of knowing such fact and by the exercise of ordinary care could not have known thereof. If the danger is obvious and as easily known to the plaintiff as to the defendant, the latter would not be liable

for failing to warn him of it. If the plaintiff had equal means with the defendant of discovering the danger, any injury resulting to him would be the result of his own fault. Now in connection with the doctrine of the assumption of risk which I have just read to you, I charge you that before this doctrine can be applied in this case, there must first be a hazard or danger inconsistent with the safety of the plaintiff. Second, the plaintiff must have a knowledge and appreciation of the hazard. And third, there must have been acquiescence or willingness on the part of the plaintiff to proceed in the face of the danger."

Under the charge there were three elements under which the jury would be authorized to find assumption of risk: (1) a hazard or danger inconsistent with the safety of the plaintiff, (2) a knowledge or appreciation of the hazard by the plaintiff, and (3) an acquiescence on the part of the plaintiff. Thus, under the charge the jury would have had to find that the plaintiff had to have actual knowledge of the condition before the doctrine of assumption of risk would be applicable. "When the judge undertakes to charge the law upon a particular subject, he should charge all [the law] on the subject that is material and applicable to the case." *Tucker v. Talmadge,* 186 Ga. 798, 800 (198 SE 726). In this case there was evidence that the plaintiff had worked as a night watchman on the defendant's premises for over three months; that he made regular rounds over said premises and walked near the "feeder hopper" regularly while at work; that at the time of the accident, the plaintiff had a lighted flashlight and was directing its beam upward as he walked and fell into the "feeder hopper." Under the evidence it was incumbent upon the trial judge to add a fourth element to his charge on assumption of risk, to the effect that such would exist if the jury should find that the plaintiff could have discovered the danger through the exercise of ordinary care for his own safety. See *Gray v. Garrison,* 49 Ga. App. 472, 480 (176 SE 412).

3. For the reasons set out above, the judgment of the trial court overruling the defendant's motion for a new trial

was erroneous, and should be reversed.

I am authorized to state that Chief Judge Bell, and Presiding Judges Hall and Eberhardt concur in this dissent.