LLOYD *v.* CITY & SUBURBAN RAILWAY COMPANY.

READ *v.* CITY & SUBURBAN RAILWAY COMPANY.

Under the facts disclosed by the record it was error to grant a nonsuit.

Argued February 10, — Decided March 2, 1900.

Action for damages. Before Judge Norwood. City court of Savannah. February term, 1899.

*O'Connor, O'Byrne & Hartridge,* for plaintiffs.
*Barrow & Osborne,* for defendant.

SIMMONS, C. J.   It appears from the record that Dr. Read, a practicing physician in the city of Savannah, was with his servant Lloyd driving on Congress street in a vehicle drawn by two horses.   Lloyd was driving.   The horses were traveling at an ordinary gait—a slow trot.   When they reached the intersection of Congress and Whitaker streets, a wire belonging to the street railway company, and which had sagged from the poles, was swinging across Congress street at about the height of the horses' necks from the ground.   This wire touched the horses' necks as they were driven under it and caused them to jump and move forward more rapidly.   The wire, passing over the horses, struck and caught Dr. Read and the driver and injured them.   It also cut off the top of the vehicle in which they were driving.   Dr. Read and Lloyd each brought an action against the street railway company, and on the trial both testified that they did not see the wire until it had struck the necks of the horses.   Dr. Read then, according to the evidence, threw up his arms to ward off the wire, but was unable to throw it over his head, and it struck him just under the nose and severely injured him.   The driver testified that he did not see the wire until Dr. Read made an exclamation and threw up his hands, the wire being then within twelve inches of his face. He also testified that he was looking straight forward along the street, as it was his duty to do, and that he did not see the wire; that he could have seen it 100 yards if his attention had been directed to it.   Dr. Read, it appears, was not looking ahead, but, as was his custom, relied upon his driver to look out for obstructions, etc., on the road or street.   There was no evidence as to the length of time the wire had been allowed to remain swinging across the street, nor was there any evidence as to what caused it to sag from the poles.   The evidence disclosed that, from the time the wire was seen by Dr. Read (and he saw it before Lloyd) until the time it inflicted the injuries, the occupants of the vehicle could not stop the horses or avoid running against the wire.   Under this state of facts the trial judge granted a nonsuit in each case.   The plaintiffs moved to rein-

state the cases, and the motions were refused. To the granting of the nonsuits and to the refusal to reinstate, the plaintiffs excepted. The cases were argued here together, and, as they contain the same evidence and are controlled by the same principles, we so treat them. We have read with interest the able and learned opinions of Judge Norwood, delivered by him in refusing to reinstate the cases. Though entertaining great respect for his learning and ability, we are constrained to differ with him as to the law governing and controlling these cases. The gist of his opinion is, that these plaintiffs can not recover under the facts above recited, because they could have avoided the results of the negligence of the railway company by the exercise of ordinary care; that while both plaintiffs testified that they did not see the wire until too late to avoid the consequences of the company's negligence, still by the exercise of ordinary care they could and should have seen the wire earlier and have avoided the danger.

Generally the principle announced in this opinion is sound, if the facts of the case are such as to make it applicable; but under the facts of the present case we think it is not applicable. When a person sees that he is in danger in consequence of the negligence of another, he is bound to avoid that danger if he can do so by the exercise of ordinary care; or if he has reason to apprehend danger occasioned by another's negligence, he must exercise ordinary care to avoid it. For instance, if one should walk upon a railroad-track, the track itself would be an intimation of danger and he would then have to exercise ordinary care in looking and listening for the approach of a train or locomotive. If he fails to do this, and is injured, he can not recover. If one on the street sees another driving recklessly and can by the exercise of ordinary care avoid the negligence of the driver, he must do so, or, failing to do so, can not recover if injured by reason of the reckless driving. If one turns the corner of a street and does not see the reckless driving and has no reason to apprehend that any one is driving recklessly, and he is injured, he can recover. If, upon the other hand, one is himself negligent and is injured by the negligence of another, then, if after he had perceived the danger or had reason to apprehend it he

could not have avoided it by the exercise of ordinary care, he can still recover in proportion to the negligence of himself and the other, provided the defendant's negligence is greater than his own. Applying these principles to the facts of the present case, did Dr. Read or his driver see the danger brought about by the negligence of the company (if there was any negligence) or have reason to apprehend it in time to have avoided it by the exercise of ordinary care? They were upon the street where they had a right to be, were driving in an ordinary manner, and had no reason to apprehend that a wire would be across their pathway, and there was nothing to put them upon their guard against such an obstruction. When a person is in the habit of traveling the streets of a city day after day and these streets are clear of obstructions, whether ordinary care would require that he should look out for unusual obstructions we, as a court, do not know. Whether he ought to see a wire the size of the little finger when he is looking straight ahead in the direction of the wire and could have seen it a much greater distance if his attention had been called to it, is, it seems to us, a question for the jury and not for the court. Assuming that the jury would find that the plaintiffs in these cases ought by the exercise of ordinary care to have seen the wire, this would be conclusive that there was negligence on their part; but still, if the defendant was also negligent and the plaintiffs' negligence was less than that of the defendant, they can recover if, after seeing or having reason to apprehend the danger, they could not then have avoided it by the exercise of ordinary care. For these reasons we think the court ought to have submitted the case to a jury.

*Judgment reversed. All the Justices concurring.*