19678. ROBERTS *v.* WICKER *et al.*

Argued April 9, 1957—Decided May 16, 1957—Rehearing
denied June 12, 1957 and July 3, 1957.

*Robert Duncan, Dudley Cook,* for plaintiff in error.

*Sutherland, Asbill & Brennan, C. Baxter Jones, Jr., T. J. Long, J. G. Roberts, Scott Edwards, Smith, Field, Doremus & Ringel, Ben Weinberg, Jr.,* contra.

Almand, Justice. Mrs. Faye P. Roberts, in her suit against Dr. L. A. Ray and Dr. Roy Wicker, sought to recover damages for personal injuries alleged to have been sustained by her when she fell while leaving the waiting room of the office of Wicker, whom she had visited as a patient, Wicker being an occupier of the premises owned by the defendant Ray. She alleged that, as she walked through the front door upon leaving the building and office of Dr. Wicker, the "toe of her right shoe caught in the threshold strip, and she was tripped and thrown forward to the concrete walkway immediately outside of said door," and that she received a break in her right leg above the knee. The threshold strip was described as an aluminum metal strip fastened to the floor immediately underneath the door and extending the entire width of the door. The metal threshold strip was described more particularly as "running the entire width of the door [and] is approximately 1 inch in heighth and is known as an aluminum interlocking threshold strip and is approximately 4½ inches wide. On the top of this strip and made as a part of it is another alumninum [sic] strip, which is approximately 1⅜ inches wide. This alumninum [sic] strip is approximately ⅜th of an inches higher than the metal strip to which it is affixed. The top edge of this alumninum [sic] strip extends out approximately ⅜th of an inch over the bottom strip so as to form a hollow groove approximately ⅜th of an inch by ⅜th of an inch. That this alumninum [sic] interlocking threshold strip interlocks with a metal strip on the bottom of the door which, when shut fits into this slit and seals same." Both of the defendants were

charged: with the negligent maintenance of this doorway "with a hollowed out place underneath the weather stripping"; with the failure to have the top metal strip and the bottom metal strip of contrasting colors; and with the failure to exercise ordinary care in keeping the premises in a safe condition and not warning the plaintiff of its dangerous condition. It was further alleged that the described dangerous condition as to the threshold was known to both defendants.

On the trial of the case, the plaintiff testified that, as she was walking out of the door, she did not look down at the floor and did not know that the metal strip was under the door; that she did not know what part of the threshold strip her foot struck, but that it made her lose her balance, causing her to fall; that she did not notice the threshold strip; and that the way that it looked had no connection with her falling. A Mrs. Moulder, who was a witness to the accident, stated that she heard a slight click as if the plaintiff had hung her foot on a piece of metal. There was evidence that both of the defendants knew that the metal strip was under the door, and that it was the type that was commonly used in other buildings; that one would not necessarily observe the ridge on the metal strip or the groove in it by walking through the door, but one would have to get down on the floor and take a level view of the strip to discern its condition. There was no evidence that anyone else had previously tripped on this metal strip.

At the conclusion of the plaintiff's evidence, the court, upon motion, granted a nonsuit as to both defendants. The plaintiff, by writ of error to the Court of Appeals, assigned error on the judgment of nonsuit. The Court of Appeals being evenly divided as to the judgment that should be rendered (Felton, C. J., Gardner, P. J., and Townsend, J., being for affirmance, and Carlisle, Quillian and Nichols, JJ., being for reversal), this case was transferred to this court.

The plaintiff occupied the status of invitee while on the premises owned by Ray and occupied by Wicker, and they owed her the duty of exercising ordinary care in keeping the premises and approaches safe. Code § 105-401. The defendants here are charged with negligent maintenance of the premises. "When

the defective condition is one of such character that reasonable and prudent men may reasonably differ as to whether an accident could or should have been reasonably anticipated from its existence or not, then the case is generally one for the jury; but when, as in this case, the defect, if any, was so slight that no careful or prudent man would reasonably anticipate any danger from its existence, but still an accident happened which could have been guarded against by the exercise of extraordinary care and foresight, the question of the defendant's responsibility is one of law." *McCrory Stores Corp.* v. *Ahern,* 65 *Ga. App.* 334, 337 (15 S. E. 2d 797). In this case, it was also said (p. 336): "The actual result of an act or omission is not controlling in determining whether or not it was negligent, nor is the duty of the person doing or omitting to do an act to be estimated by what, after an injury has occurred, then first appears to be a proper precaution; but the question of negligence must be determined according to what should reasonably have been anticipated, in exercise of ordinary care, as likely to happen. 45 C. J. 660, § 28. 'It is not uncommon for a person to fall downstairs when there is no defect in the stairway or its covering. A heel may catch on the edge of the stair, or the carpet, and a fall result. The fault rests, not with the stairway, but with the person who so placed his foot. . . *Negligent maintenance* may involve a great variety of defects; a broken tread, a hole in the tread, defective metal covering, debris, snow and ice, torn carpet, and the like. But the defective step must be identified with the plaintiff's fall, and *notice* of the defective condition must be brought home to the party sought to be charged.' . . . 4 Sherman and Redfield on Negligence, (rev. ed.) 1820, 1822, § 797."

Where there is nothing in the evidence to indicate the propriety or the necessity of making an inspection to ascertain the possible or probable existence of any defects, ordinary diligence does not require an inspection where there is no reason to think an inspection is necessary. *Cuthbert* v. *Schofield,* 35 *Ga. App.* 443 (1) (133 S. E. 303); *Williamson* v. *Kidd,* 65 *Ga. App.* 285 (15 S. E. 2d 801).

The petition charged that the crevice or groove, between the

bottom aluminum metal strip and the aluminum strip $\frac{3}{8}$ of an inch higher than the bottom strip attached to the floor, created a dangerous and defective condition, not obvious and apparent to one in the exercise of ordinary care, and that the defendants had actual knowledge of this condition. The evidence on her behalf discloses that, even if the metal threshold was defective, in order to discover it, one would have to "get down on the floor and take a level view of it." There is nothing in the evidence to show or indicate the necessity of making such an inspection to ascertain the possible or probable existence of any defect, such as that other people had tripped or fallen while walking over the threshold strip. Ordinary diligence, under such circumstances and the facts of this case, did not require an inspection where the defendants had no reason to think an inspection was necessary. See *McCrory Stores Corp.* v. *Ahern,* 65 *Ga. App.* 334, supra; *McCarthy Stores* v. *Hiers,* 81 *Ga. App.* 365 (59 S. E. 2d 22) ; *Howerdd* v. *Whitaker,* 87 *Ga. App.* 850 (75 S. E. 2d 572) ; *Pilgreen* v. *Hanson,* 89 *Ga. App.* 703 (81 S. E. 2d 18).

Admitting all of the facts proved and all reasonable deductions therefrom, the plaintiff was not entitled to recover, and the trial court properly granted a judgment of nonsuit.

*Judgment affirmed. All the Justices concur except Duckworth, C. J., Head and Candler, JJ., who dissent.*