42091. CROSBY, by Next Friend v. SAVANNAH ELECTRIC & POWER COMPANY.

ARGUED JUNE 10, 1966—DECIDED JULY 14, 1966—
REHEARING DENIED JULY 28, 1966—

*W. Ward Newton,* for appellant.

*Bouhan, Lawrence, Williams & Levy, Frank W. Seiler, E. Pomeroy Williams,* for appellee.

EBERHARDT, Judge. █ *Plaintiff's status.* It is contended by the defendant that the allegations of the petition show plaintiff to have been a trespasser. We agree.

In determining the status of a person, that is to say, whether he was an invitee, a licensee or a trespasser, neither his age nor his capacity, mental or physical, is a factor for consideration. *Savannah, Fla. &c. R. Co. v. Beavers,* 113 Ga. 398 (39 SE 82); *Atlanta & West Point R. Co. v. West,* 121 Ga. 641, 646 (49 SE 711); *Augusta Amusements, Inc. v. Powell,* 93 Ga. App. 752, 753 (92 SE2d 720). Consequently, the determination here must be without reference to the fact that plaintiff was a boy fifteen years of age with the mentality of a normal child of eight or nine years.

There are no allegations of invitation to the plaintiff by the defendant, or of the extending to him of permission to climb its power pole. On demurrer, the petition must be construed in the light of these omissions as well as of the averments. *Houston v. Pollard,* 217 Ga. 184 (121 SE2d 629); *Strother v. Kennedy,* 218 Ga. 180, 186 (127 SE2d 19); *Henderson v. Baird,* 100 Ga. App. 627, 633 (112 SE2d 221). It must be assumed that there was neither invitation nor permission extended.

A trespasser is one who, though peaceably, wrongfully enters upon the property of another. In the context here it is one who wrongfully goes upon or climbs the pole of the defendant; or, to state it differently, one who, without authority or permission from the owner, does so. Permission or consent to climb the pole can not be implied, even if the owner may have knowledge that it was customary for children to play in the area where it was located. *Rowland v. Byrd,* 57 Ga. App. 390 (195 SE 458). Nor would it matter that the children may have been licensees as to the ground where they played, for extension of permission (express or implied) by the owner of the ground to play upon it could not include an extension of permission by the owner of the pole to climb it. Cf. *Piggly Wiggly Macon, Inc. v. Kelsey,* 83 Ga. App. 526 (64 SE2d 201), and *Smith v. Jewell Cotton Mill Co.,* 29 Ga. App. 461 (2) (116 SE 17), where it was held that "[T]he invitee may not wander at will, without further invitation, to out-of-the-way or dangerous places on the premises, or use parts thereof for purposes wholly disconnected from and in no way pertaining to the business in hand or the objects of the invitation. . ." It could not be assumed that a permission to

play upon the land area in the vicinity of the pole would extend to the climbing of the pole to highly dangerous wires some twenty feet above, even if the land and the pole were under common ownership, and much less so when it appears, as here, that the land and the pole were under separate ownership.

"A power company constructed over the land of another, with his consent, its transmission line. The wires were three in number, strung to poles at a height of 22 feet from the ground. The wires passed over a sweetgum tree, the top of which had been cut out to prevent contact of the wires with the tree. The wires were not insulated, and carried an electrical current of high voltage. The tree had sometimes been visited by children for the purpose of procuring the gum which exuded from cuts or abrasures on the tree, but the power company's officials had no knowledge of this. A thirteen-year-old boy, unusually well-grown for his age, though warned by his father some months previously of the dangerous character of the wires, climbed the tree in search of gum, came in contact with the wires, and was killed. *Held,* that in a suit for damages for the alleged wrongful death of the boy, the power company is not liable." *Brown v. Panola Light &c. Co.,* 137 Ga. 352 (73 SE 580). A similar case is *Bridges v. Georgia Power Co.,* 39 Ga. App. 400 (147 SE 589), though it does not appear that the child had been previously warned of the danger, and the same result was reached. Another is *Smith v. Georgia Power Co.,* 43 Ga. App. 210 (158 SE 371), where the facts are similar and the attractive nuisance or "turntable" doctrine was invoked, but the court held no liability to exist. In *Mobley v. City of Monroe,* 37 Ga. App. 364 (140 SE 516), a pole carrying high voltage wires was located near a water tower. An eleven year old boy climbed the tower and in descending his hand or arm came in contact with one of the wires, as a result of which he fell to the ground and died. Again the attractive nuisance doctrine was invoked, but the court held no liability to exist. In *Scott v. State Mut. Life Ins. Co.,* 24 Ga. App. 232 (100 SE 639), a ten-year-old boy was out picking blackberries and returning along a well used pathway on land not owned by the defendant, stumbled and in falling reached out and caught one of

defendant's sagging wires, receiving severe burns. Again the sustaining of a general demurrer was affirmed.

In *Butler v. Brogdon,* 110 Ga. App. 352 (138 SE2d 604), a six-year-old child went upon premises where a building operation was in progress and was burned by a raw, bare, uninsulated live wire alleged to have been left over the weekend in an inherently dangerous condition, and the sustaining of a general demurrer was affirmed.

In each of these cases the child was, expressly or by necessary implication, held to have been a trespasser (in any event no more than a bare licensee, where the rule is the same) to whom no duty was owed save that of not luring him into a mantrap or doing him wilful and wanton harm. *Leach v. Inman,* 63 Ga. App. 790 (12 SE2d 103).

*Mantraps.* Did the uninsulated wire, covered with a dark weather-proofing substance, leading from the high voltage transmission line into the transformer box constitute a "mantrap" within the meaning of this rule? We think not.

The doctrine of mantrap or pitfall is rested upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to do him injury. Mosley v. Alabama Power Co., 246 Ala. 416 (21 S2d 305). A typical example is the setting of a spring or trap gun to stop or prevent depredations by animals or humans, as in *Wilder v. Gardner,* 39 Ga. App. 608 (147 SE 911). In that situation the owner expects that a trespasser will come, and deliberately sets a trap designed to do injury. It may result from the knowledge on the part of the owner of the existence of a dangerous or hazardous condition coupled with a conscious indifference to the consequences, so that a deliberate intent to inflict injury is inferable (*Louisville & Nashville R. Co. v. Young,* 112 Ga. App. 608, 613 (145 SE2d 700)); or from a dangerous condition hidden with sufficient cover to obscure it or to render it unobservable to one who approaches it. Cf. *Bohn v. Beasley,* 51 Ga. App. 341 (180 SE 656), and see *Fuller v. Louis Steyerman & Sons, Inc.,* 46 Ga. App. 830 (169 SE 508). The hazard is latent or concealed. *Central of Ga. R. Co. v. Lawley,* 33 Ga. App. 375 (4) (126 SE 273).

Our research has revealed few cases in which the situation con-

sidered was held to have been a mantrap. Other than those above cited, are *Rollestone v. Cassirer & Co.*, 3 Ga. App. 161 (59 SE 442), in which the customer of a bar, being in an intoxicated condition, leaned or pulled upon a top-heavy unbalanced bar counter, in a state of unstable equilibrium, causing it to fall onto and injure him. While it was asserted that this situation presented a "hidden peril" so imminent as to require warning to the customer, it is to be kept in mind that he was not a trespasser but a licensee, and that his presence was known to the proprietor before the occurrence.

Another situation is where the power company and the owner of a sawmill knowingly permitted children to play on a sawdust pile that was accumulating under a high voltage uninsulated electric line and took no steps to alleviate the dangerous condition or to prevent the continued play when the sawdust pile had built to a height just under the line. There were allegations of knowledge that the children had been and were customarily playing under the wire until it reached a height enabling one of them to reach up and take hold. From this, a conscious indifference and resulting intent to injure might have been inferred. And again, the children were not trespassers, but licensees whose presence was known. *Clinton v. Gunn-Willis Lmbr. Co.*, 77 Ga. App. 643 (49 SE2d 143).

Others are: *Central of Ga. R. Co. v. Ledbetter*, 46 Ga. App. 500 (168 SE 81) involving an unlighted opening in a walkway from the dock to ships provided for people to get on or off the ship, but see *Kinnebrew v. Ocean Steamship Co.*, 47 Ga. App. 704 (171 SE 385); and *Spindel v. Gulf Oil Corp.*, 100 Ga. App. 323 (111 SE2d 160), where a rope was stretched across an entrance way in a shopping center at a height and in a manner to make it unobservable to a boy who rode into it on a bicycle. He was not a trespasser, and the court observed that it was not necessary to determine whether he was an invitee or a licensee, since reasonably his presence should have been anticipated. In *Etheredge v. Central of Ga. R. Co.*, 122 Ga. 853 (50 SE 1003) there is indication that a ditch opened near a path, generally used and partially hidden from sight, might, as to those using the path, constitute a hidden peril. However, in that case since the

child wandered from the path and at some distance away fell into the ditch it was held that it did not, under those facts, constitute a hidden peril giving rise to a cause of action. And see *Cox v. Greenfield*, 50 Ga. App. 699 (179 SE 178); *Smith v. Seawright*, 33 Ga. App. 336 (126 SE 301); *Petree v. Davison-Paxon-Stokes Co.*, 30 Ga. App. 490 (118 SE 697).

The following have been held not to be mantraps, pitfalls or hidden perils within this rule: A door opening into a dark, empty space below, *Pries v. Atlanta Enterprises, Inc.*, 66 Ga. App. 464 (17 SE2d 902); iron pipes on stands 12 feet apart, 18 inches high, used as shifting rods for a railroad signal apparatus, wet and slippery from rain, *Cook v. Southern R. Co.*, 53 Ga. App. 723 (187 SE 274); *Mathis v. Central of Ga. R. Co.*, 46 Ga. App. 506 (168 SE 97); a porch severed from a destroyed house with heavy cement and tile surface, supported by a porous, cinder-like base which crumbled easily from slight weight or pressure, *George v. Continental Wrecking Corp.*, 101 Ga. App. 538 (114 SE2d 383); an unlighted stairway which plaintiff did not see and stepped into near the entrance to an apartment, *Mortgage Commission Servicing Corp. v. Brock*, 60 Ga. App. 695 (4 SE2d 669); an unbraced and unsupported automobile tire and rim balanced in a trench near a drain rack at a service station, *Bowers v. The Texas Co.*, 65 Ga. App. 874 (16 SE2d 765); the soil pan of a bulldozer suspended three feet from the ground falling on a child as he played under it, *Brown v. Bone*, 85 Ga. App. 22 (68 SE2d 190); a rotten plank on a wharf, giving way when stepped upon by one who sought to visit a passenger on a ship at 2 p.m., *Kinnebrew v. Ocean Steamship Co.*, 47 Ga. App. 704, supra; easily dislodged crossties and logs piled adjacent to a public street, *Atlantic Coast Line R. Co. v. O'Neal*, 180 Ga. 153 (178 SE 451); a darkened stairway on which the banister did not run all the way to the floor, *Leach v. Inman*, 63 Ga. App. 790 (12 SE2d 103); a steel rail placed on ends of two short telephone poles, three and a half feet high and leaning at an angle of 30 degrees, *Martin v. Seaboard Air Line R. Co.*, 101 Ga. App. 819 (115 SE2d 248), and 103 Ga. App. 281 (119 SE2d 56); a concealed ditch, *Nechtman v. Wellington Plaza, Inc.*, 97 Ga. App. 40 (102 SE2d 57); step leading from hallway into lower room,

*Wardlaw v. Executive Committee of Southern Baptist Convention,* 47 Ga. App. 595 (170 SE 830), reversed on other grounds, in *Executive Committee v. Wardlaw,* 180 Ga. 148 (178 SE 155); an unloaded clay-pigeon trap, *Healey v. Webb,* 60 Ga. App. 331 (3 SE2d 868); gasoline left unguarded and accessible to children having matches, *Henderson v. Baird,* 100 Ga. App. 627 (112 SE2d 221); gasoline vapors accumulating from the vent of an underground storage tank, *Young v. Towles,* 113 Ga. App. 471 (148 SE2d 455); an unguarded electric washing machine wringer left in operation, *Ricks v. Boatwright,* 95 Ga. App. 267 (97 SE2d 635); a mechanically operated iron gate bar, *Cobb v. First Nat. Bank of Atlanta,* 58 Ga. App. 160 (198 SE 111); an open cistern partially filled with water, *Crawford v. Pollard,* 55 Ga. App. 702 (191 SE 162); an open pond of water, *Fickling v. City Council of Augusta,* 110 Ga. App. 330 (138 SE2d 437); *Crews v. Slappey,* 110 Ga. App. 496 (138 SE2d 919); an open well, *Frankum v. Farlinger,* 35 Ga. App. 305 (132 SE 923); an uncovered and unguarded excavation, *Savannah, Fla. &c. R. Co. v. Beavers,* 113 Ga. 398 (39 SE 82); an uninsulated live electric wire left over the weekend on premises where building operation was in progress, *Butler v. Brogdon,* 110 Ga. App. 352, supra; excavation on a lot where building operation was in progress, *Baxley v. Williams Constr. Co.,* 98 Ga. App. 662 (106 SE2d 799); an open staircase well leading from outside into a basement, *Todd v. Armour & Co.,* 44 Ga. App. 609 (162 SE 394); a ventilation pit or air shaft at back of a lot, *Greenfield v. Watson,* 54 Ga. App. 9 (187 SE 183).

We find no mantrap situation in this case. It does not appear from the allegations that there was any preparation of the pole for the purpose of doing injury to an expected trespasser, or that the defendant acted with such conscious indifference concerning it as to infer an intent to injure.

*Wilful and wanton negligence.* Does the petition show wilful and wanton negligence on the part of this defendant? We think not. Illustrative of what an act of wilful and wanton negligence is may be found in *Savannah, Fla. &c. R. Co. v. Godkin,* 104 Ga. 655 (30 SE 378), where a brakeman forcibly expelled a person from the train while it was in motion; and in *Primus v. Macon*

*R. &c. Co.*, 126 Ga. 667 (55 SE 924), where an employee of the street railway pushed and shoved a child from a moving car. It was asserted in *Cook v. Southern R. Co.*, 53 Ga. App. 723, 728 (187 SE 274) that the "[d]efendant being liable only for wilful and wanton injury, [to a licensee] we may consider that 'wilfulness and wantonness *import premeditation or knowledge and consciousness that injury will result* from the act done.'" (Emphasis supplied).

"In addition the defendants would not be liable for anything but affirmative acts, amounting to wilfulness. *Leach v. Inman*, 63 Ga. App. 790 (2, 4), supra; *Atlantic Coast Line R. Co. v. O'Neal*, 180 Ga. 153, supra; 49 ALR 795; 156 ALR 1236; *Atlantic Steel Co. v. Cleaton*, 52 Ga. App. 502, 506 (183 SE 827)." *Baxley v. Williams Constr. Co.*, 98 Ga. App. 662, 670, supra. Something more than mere negligence must appear. *Pennsylvania Threshermen &c. Cas. Ins. Co. v. Hill*, 113 Ga. App. 283, 290 (148 SE2d 83).

The owner owes no duty to a licensee, and certainly none to a trespasser, to inspect the premises or to prepare a safe place for his reception. *Cobb v. First Nat. Bank of Atlanta*, 58 Ga. App. 160 (2 a, b), supra; Restatement, Torts, § 342; Prosser, Torts, (3rd Ed.) Ch. 11, § 60. Accord, *Roberts v. Wicker*, 213 Ga. 352, 355 (99 SE2d 84); *McLaury v. McGregor*, 110 Ga. App. 679 (2) (139 SE2d 444).

*Defendant's franchise, and the city ordinance.* Do the provisions in the franchise obtained August 18, 1905, from the City of Savannah to the defendant, requiring that it insulate its wires thoroughly and maintain them to the satisfaction of the mayor and aldermen impose a duty upon the defendant to this plaintiff, under the facts alleged? We think not.

It is alleged that the franchise was granted by a city ordinance, but it matters not whether the negligence relied upon was of the common law type or that which resulted from the violation of some law or ordinance; it must appear that the plaintiff was injured as the result of a violation of some duty owed to him. There is no distinction between the two kinds of negligence as affecting the plaintiff's right to recover. *Tyson v. Shoemaker*, 208 Ga. 28, 31 (65 SE2d 163). Unless it could be said that the power company

should have anticipated that a trespasser would climb the pole and take hold of the wire, the ordinance requiring insulation was not for his benefit. *Platt v. Southern Photo Material Co.*, 4 Ga. App. 159, 164 (60 SE 1068). It was for the protection of those who might become injured in a reasonably anticipated situation, as, for example perhaps, when the wires of another utility carried on the same poles might come in contact with the power line and do harm to an employee of the other utility when making line repairs, as in *Atlanta Consolidated Street R. Co. v. Owings*, 97 Ga. 663 (25 SE 377), *Columbus R. Co. v. Dorsey*, 119 Ga. 363 (46 SE 635), and *Trammell v. Columbus R. Co.*, 9 Ga. App. 98 (70 SE 892); or for others who may be injured because of lack of insulation when the energized lines of the second utility break and fall to the ground, as in *Eining v. Georgia R. &c. Co.*, 133 Ga. 458 (66 SE 237); or similarly when one is injured while moving a house under the power line, as in *Sedlmeyr v. City of Fitzgerald*, 140 Ga. 614 (79 SE 469); or when metal pipes, rods and the like which are being handled below the line come in contact with the uninsulated line and become energized, as in *Central of Ga. R. Co. v. Lawley*, 33 Ga. App. 375 (126 SE 273), *McCullough v. Georgia Power Co.*, 81 Ga. App. 293 (58 SE2d 505), *Welch v. City of Camilla*, 86 Ga. App. 609 (72 SE2d 83), *Lamar Elec. Membership Corp. v. Carroll*, 89 Ga. App. 440 (79 SE2d 832), *Gilbert v. Ocmulgee Elec. Membership Corp.*, 93 Ga. App. 219 (91 SE2d 186), *Planters Elec. Membership Corp. v. Burke*, 98 Ga. App. 380 (105 SE2d 787), and *Gilbert v. Ocmulgee Elec. Membership Corp.*, 100 Ga. App. 638 (112 SE2d 207); or when the uninsulated line breaks and falls to the ground where people may be expected to come in contact with it, as in *Southern Bell Tel. & Tel. Co. v. Davis*, 12 Ga. App. 28 (76 SE 786), *Southern Bell Tel. & Tel. Co. v. Ellis*, 16 Ga App. 864 (87 SE 766), *Savannah Lighting Co. v. Harrison*, 20 Ga. App. 8 (92 SE 772), *Darden v. Mayor &c. of Washington*, 35 Ga. App. 777 (134 SE 813); or when the highly charged uninsulated wires are permitted to sag near the street, as in *Lloyd v. City & Suburban R. Co.*, 110 Ga. 165 (35 SE 170), *City Council of Augusta v. Tharpe*, 113 Ga. 152 (38 SE 389), *Midland Properties Co. v. Farmer*, 100 Ga. App. 8 (110 SE2d 100), and *Slappy v. Georgia Power Co.*,

109 Ga. App. 850 (137 SE2d 537), but see *Read v. City & Suburban R. Co.*, 115 Ga. 366 (41 SE 629), *Higginbotham v. Rome R. Light Co.*, 23 Ga. App. 753 (99 SE 638), *Rome R. & Light Co. v. Robinson*, 35 Ga. App. 521 (134 SE 132) and *Georgia Power Co. v. Wood*, 43 Ga. App. 542 (159 SE 729); or when construction work is being performed in proximity to the uninsulated high voltage lines, as in *Rome R. & Light Co. v. Jones*, 33 Ga. App. 617 (127 SE 786), *Rome R. & Light Co. v. Jones*, 37 Ga. App. 244 (139 SE 579), *City of Albany v. James*, 39 Ga. App. 379 (147 SE 396) and *Altamaha Elec. Membership Corp. v. Irvin*, 106 Ga. App. 491 (127 SE2d 326).

The duty of insulating is not absolute. If the company maintains its wires at a height such that it is not reasonable to anticipate that people will come in contact with them, it is not generally required. 29A CJS 1073, Electricity, § 42; 26 AmJur2d 332, Electricity, § 122. Cf. Croxton v. Duke Power Co., 181 F2d 306; Morton's Admr. v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174 (138 SW2d 345); Buell v. Utica Gas &c. Co., 259 N. Y. 443 (182 NE 77); Webb v. Louisiana Power &c. Co. (La. App.) 199 S 451; Trimyer v. Norfolk Tallow Co., 192 Va. 776 (66 SE2d 441); Glasscock v. U. S., 207 FSupp. 318.

The extent of liability would not differ whether it rested upon common-law negligence or upon a provision in an ordinance, as was pointed out in *Tyson v. Shoemaker*, 208 Ga. 28, supra, though the quantum of proof required would differ. 26 AmJur2d 335, Electricity, § 123. But a breach of duty, whether statutory or common law, owing to the plaintiff must first appear, and it does not appear under the allegations of this petition. Moreover, provisions of this type in an ordinance granting a power company the right to erect its lines along the public streets have been held to be directory and contractual only, which the city may afterwards waive by its conduct. *South Georgia Power Co. v. Smith*, 42 Ga. App. 100 (2) (155 SE 80); *Callaway v. Central Ga. Power Co.*, 43 Ga. App. 820 (3) (160 SE 703). And since the provisions are contractual between the city and the power company a breach of them would give rise to a cause of action between them only, unless it appears that the plaintiff would have a right of action for his injury independently of the contract.

*Code* § 105-106. Cf. *Freeman v. Macon Gas Light &c. Co.,* 126 Ga. 843, 847 (56 SE 61, 7 LRA (NS) 917).

Concerning the ordinance prohibiting the placing of hooks or prongs on poles at heights less than eight feet from the ground, we do not find any violation alleged. Braces for holding the meter box do not come within the prohibited category. These were not intended for the purpose of climbing; the diagram attached to the petition as an exhibit discloses that they were not so designed. The box rested on them and they turned up around it to prevent it from becoming displaced. It was to the placing of accessories *designed for climbing* use that the ordinance was directed. If the plaintiff used the braces for climbing, he made an unintended use of them. "Where an instrumentality is being put to a purpose or use not intended, the owner or person in control thereof is not liable for injuries occasioned thereby, unless he had actual knowledge that it was defective and unsuited for that purpose, and also knew or should have anticipated that it would be diverted to the foreign use." *Culbreath v. Kutz Co.,* 37 Ga. App. 425 (1) (140 SE 419). Accord, *Hornsby v. Haverty Furn. Co.,* 85 Ga. App. 425, 430-431 (69 SE2d 630); *Augusta Amusements, Inc. v. Powell,* 93 Ga. App. 752, 758 (92 SE2d 720).

Nor can it be said that the presence of the pipes to the fuel oil tanks of Starland Dairies were "hooks or prongs" in violation of the ordinance. They were not attached to the pole, were not the property of the defendant, and were not placed by the defendant. Obviously these were not intended to be used as a "ladder" in climbing defendant's pole.

*Knowledge or notice.* There is no allegation of actual knowledge on the part of the defendant that plaintiff was climbing or would climb the pole. It is alleged that the defendant knew children had customarily played in the vicinity of the pole for a long period of time, and it is alleged that plaintiff's presence on the premises was known, or should have been known. On general demurrer this must be taken as no more than an allegation of constructive knowledge. *Doyal v. Russell,* 183 Ga. 518 (189 SE 32); *Belch v. Sprayberry,* 97 Ga. App. 47 (2) (101 SE2d 870). Since we conclude that plaintiff's status was that of a trespasser,

it must appear that the defendant had actual knowledge of his presence on the pole if it is to be held for injury occasioned by anything less than a mantrap or wilful and wanton negligence. "In order to impute to a corporation notice or knowledge acquired by one of its officers or agents, the information must have been acquired while such officer or agent with reference to the subject-matter of his agency was 'acting for it in connection with its business, and within the scope of his agency.' " *Georgia Power Co. v. Kinard*, 47 Ga. App. 483, 487 (4) (170 SE 688). That the defendant may have known that children customarily played in the vicinity of the pole is an allegation of neither notice nor knowledge that the pole would be climbed.

That the defendant knew of the uninsulated condition of its wire strung on the poles some 20 feet above the ground, or of the wire running from the transmission line into the transformer box just under the line, does not charge it with notice that a trespasser would enter a situation of danger by climbing the pole and taking hold of the line. If the uninsulated wire be regarded as a defect, "[t]here is a difference between notice of defect and knowledge of danger." *Bray v. Cross*, 98 Ga. App. 612, 618 (4) (106 SE2d 315).

*Conclusion.* The sustaining of a general demurrer to each of the counts in the petition was proper. Additional authorities supporting this conclusion are: *Augusta R. Co. v. Andrews*, 89 Ga. 653 (16 SE 203), holding that failure to allege that the plaintiff had permission from the owner of an electric system to climb its pole and come in contact with its wires rendered the petition subject to a general demurrer; aliter when permission to climb was alleged, *Augusta R. Co. v. Andrews*, 92 Ga. 706 (19 SE 713); and see *Columbus R. Co. v. Dorsey*, 119 Ga. 363 (46 SE 635).

"It appear[s] that the plaintiff placed himself in a position of peril by his own acts, and that the defendant company could not reasonably have foreseen that its alleged acts of negligence would concur with those of the plaintiff so as to injure him. . ." *Hornsby v. Haverty Furn. Co.*, 85 Ga. App. 425 (1a), supra. "The duty to a trespasser does not flow from the relation; none exists, except a wrongful relation. It can arise only with the

peril to the trespasser. Until the peril arises, and until the defendant knows of the peril to the trespasser, there can be no duty to warn the trespasser. To assume such a duty is to assume the prior duty to think for the plaintiff, and to anticipate that he may put himself in a position of peril." *Central Ga. Power Co. v. Walker*, 20 Ga. App. 645, 647 (93 SE 306). And see 26 Am Jur2d 298, Electricity, § 91.

What is held here in no way detracts from the rule that those who engage in the production and distribution of electricity must exercise a high degree of care, commensurate with the danger involved, to prevent injuries to others by the electricity.

*Judgment affirmed. Bell, P. J., and Jordan, J., concur.*