Richard Alton NYE, Plaintiff,

v.

UNION CAMP CORPORATION, Defendant.

Civ. A. No. 286–184.

United States District Court,
S.D. Georgia,
Brunswick Division.

Oct. 30, 1987.

Robert W. Harrison, Jr., Folkston, Ga., Benjamin Smith, Jr., Waycross, Ga., for plaintiff.

Frank W. Seiler, Savannah, Ga., for defendant.

## ORDER

ALAIMO, Chief Judge.

In this negligence action, plaintiff, Richard Nye, seeks to hold defendant, Union Camp Corporation ("Union Camp"), liable for the damages he incurred when he went for a midnight swim in a lake on defendant's property.

Because Nye was at most a bare licensee, Union Camp owed to Nye only a limited duty of care, and there is no evidence suggesting a breach of that limited duty. Consequently, summary judgment in favor of Union Camp is appropriate under Rule 56 of the Federal Rules of Civil Procedure.

**FACTS**

Around midnight of September 14–15, 1984, Richard Nye, 22 years old at the time, drove with a friend, Jimmy Keyser, to a lake located on property owned by Union Camp in Glynn County, Georgia. Between eight and twelve other people were at the lake when the men arrived. The group's four cars were parked at the edge of the lake with their lights shining out over the water.

About twenty minutes after he arrived, Nye decided to go for a swim. He ran down the beach and into the lake to approximately thigh depth and then made a shallow dive into the water. He struck his head on a submerged object (which he now believes to have been a tree stump) and was knocked unconscious.

It was Nye's first visit to the lake, and he admits that he did not have express permission to enter the property. However, he testified that he believed that he did not need permission and that the lake was regularly used by the public for recreational purposes.

There is some dispute as to the public nature of the lake and its surrounding property. The lake was located in the Satilla Forest property owned by Union Camp. The lake was created as a result of soil removal used in a land-fill project and, at the time, the lake covered approximately 63 acres of surface land.

Access to the lake was via a dirt road which ran directly off of a well-traveled public highway. Nye contends that the access road was wide enough for cars to pass and that the road had no cable, chain, trench or other barrier preventing access to the lake by the public. Nye has introduced testimony by Keyser and others stating that the public used the lake and surrounding property for swimming, boating, water-skiing, fishing, scuba diving and camping. According to plaintiff, a boat ramp was in place and a ski jump was anchored in the lake.

Defendant admits receiving payment for the fill removed from its property but asserts that the actual removal of the soil, and consequently the creation of the lake, was the result of the activities of others. While defendant's agents admit knowing that the lake was used by the public, they have made no statements regarding the extent of that use. They aver that the property was regularly posted with no-trespassing signs and stress that Nye had no express permission to enter the property. They also aver that no Union Camp employees had actual knowledge of the presence of the group of people at the time in question.

Union Camp contends that these facts establish that Nye was a trespasser, or at most a bare licensee, and consequently was owed only a limited duty. Defendant also argues that Georgia's Recreational Property Act, O.C.G.A. §§ 51–3–20 *et seq.,* is inapplicable or, if applicable, does not enhance Union Camp's duty to Nye.

## DISCUSSION

Plaintiff filed this suit in Georgia Superior Court, and defendant removed the action to this Court based on diversity of citizenship. Hence, Georgia tort law governs the merits of this claim, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Goodwin v. George Fischer Foundry Systems, Inc.,* 769 F.2d 708, 711 (11th Cir.1985), and federal law governs the procedural aspects of this summary judgment motion. *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed. 2d 8 (1960).

Summary judgment is appropriate when no genuine issue of material fact exists, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment requires that the movant establish the absence of genuine material issues of fact, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142, 152 (1970), and is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986).

Conflicting factual contentions are not to be balanced by the Court at this time; rather, all disputes are resolved in favor of the non-moving party. *Carlin Communication Inc. v. Southern Bell Tel. & Tel. Co.,* 802 F.2d 1352, 1356 (11th Cir.1986). Additionally, all reasonable inferences arising from the facts are to be made in favor of the non-moving party. *Id.; see also Tippens v. Celotex Corp.,* 805 F.2d 949 (11th Cir.1986). However, an inference based on speculation and conjecture is *not* reasonable. *Blackston v. Shook & Fletcher Insulation C.,* 764 F.2d 1480, 1481 (11th Cir.1985).

### (A) Negligence of Owner/Occupiers of Land

This is not an extraordinary negligence action; an injured person is seeking damages due to the acts or omissions of an owner/occupier of land. As in all negligence actions, the plaintiff must show that the defendant had a legal duty to conform to a standard of care, a breach of that duty, cause and damages. *Lee Street Auto Sales v. Warren,* 102 Ga.App. 345, 347, 116 S.E.2d 243 (1960).

It is often said that the issue of breach in a negligence action (*i.e.,* whether a defendant fell below the standard of care owed) is almost invariably a jury question. *Gross v. Southern Railway Co.,* 414 F.2d 292, 296 (5th Cir.1969); *Garrett v. Royal Bros. Co.,* 225 Ga. 533, 535, 170 S.E.2d 294 (1969). Georgia decisions have held, however, that summary judgment is proper in situations where the defendant's duty is very limited. *E.g., Epps v. Chattahoochee Brick Co.,* 140 Ga.App. 426, 231 S.E.2d 443 (1976); *Higginbotham v. Winborn,* 135 Ga.App. 753, 218 S.E.2d 917 (1975) (granting summary judgment for defendant landowners). *But see MacKenna v. Jordon,* 123 Ga.App. 801, 182 S.E.2d 550 (1971); *Bohn v. Beasley,* 51 Ga.App. 341, 180 S.E. 656 (1935).

Under Georgia law, the standard of care encompassed in the duty of an owner/occupier of land depends upon the status of the plaintiff and the nature of the activities

taking place on the land. *See* O.C.G.A. § 51–3–1 (duty owed to invitees); O.C.G.A. § 51–3–2 (duty owed to licensees); *Barber v. Steele,* 133 Ga.App. 290, 292, 211 S.E.2d 133 (1974) (duty owed to trespassers); and O.C.G.A. § 51–3–20 *et seq.* (duty owed to persons when the land is opened for recreational purposes).

### (B) Status of Plaintiff

Nye was not an invitee of Union Camp. An invitee is one who comes onto another's land with express or implied invitation. O.C.G.A. § 51–3–1. The invitation must be connected to the business of the occupant. *Higginbotham, supra* 135 Ga.App. at 754, 218 S.E.2d 917. As the court quotes:

"The general test as to whether a person is an invitee or a licensee is whether the injured person at the time of the injury had present business relations with the owner of the premises which would render his presence of mutual aid to both, or whether his presence on the premises was for his own convenience, or on business with others than the owner of the premises. In the absence of some relation which inures to the benefit of the two, or to that of the owner, no invitation may be implied, and the injured person must be regarded as a licensee."

*Id.* at 755, 218 S.E.2d 917, *quoting Cook v. Southern RR. Co.,* 53 Ga.App. 723, 725–26, 187 S.E. 274 (1936). This mutuality-of-interests test has been applied uniformly by the Georgia courts. *E.g., Atkins v. Tri–Cities Steel, Inc.,* 166 Ga.App. 349, 304 S.E.2d 409 (1983); *McCall v. McCallie,* 48 Ga.App. 99, 171 S.E. 843 (1933).

■ Plaintiff forcefully argues that he had implied permission to enter the property. However, implied permission is not the same as business invitation. Any such implied permission does not enhance Nye's status to that of an invitee.

■ The *Atkins* decision, which held that a plaintiff's status as an invitee or licensee was a jury question, is not controlling on these facts. In *Atkins,* there were questions regarding both a possible landlord/tenant relationship and a possible benefit of providing security to the defendant's

property conferred on the defendant. In this case, there is *no* evidence suggesting that any benefits were conferred on Union Camp by Nye's presence. Accordingly, it is appropriate for the Court to rule that Nye was, at most, a bare licensee at the time of the injury.

■ On the other hand, Nye's evidence regarding the public's access to and use of the lake, coupled with Union Camp's apparent acquiescence to that use, provide sufficient evidence that Nye had the requisite permission to enhance his status to that of a licensee. There is also conflicting evidence regarding the existence and sufficiency of no-trespassing signs, which appears to be a determinative factor for applying the recreational-use statute. *See Georgia Power Co. v. McGruder,* 229 Ga. 811, 194 S.E.2d 440 (1972). However, neither implied *permission* nor recreational use enhances Union Camp's duties owed to Nye beyond those owed to a licensee.

The duty owed to a licensee is at least as great as, if not greater than, the duties owed to trespassers and recreational users. *See Housing Authority of Atlanta v. Famble,* 170 Ga.App. 509, 512–13, 317 S.E.2d 853 (1984), and *Crosby v. Savannah Elec. & Power Co.,* 114 Ga.App. 193, 198, 150 S.E.2d 563 (1966) (duties owed to trespassers and licensees); *Herring v. Hauck,* 118 Ga.App. 623, 165 S.E.2d 198 (1968) (duties owed to licensees and recreational users). Thus, if Union Camp did not breach the duty owed to Nye as a licensee, it follows that it could not have breached the *lesser* duties owed to trespassers and recreational users. While there remains a question as to Nye's legal status between that of a trespasser, recreational user or licensee, it is clear that that issue is not "material," as that term relates to summary judgment. *See Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465.

### (C) Duty Owed to a Licensee

The Georgia code states that an owner of land "is liable to a licensee only for wanton

and willful injury." O.C.G.A. § 51–3–2(b). The most thorough discussion of this duty is found in *Crosby v. Savannah Elec. & Power Co., supra.* There, the court concludes that a landowner owes no duty to a licensee "save that of not luring him into a mantrap or doing him wilful or wanton harm," and states: "The doctrine of mantrap or pitfall is rested upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to do him injury." *Id.* 114 Ga.App. at 198, 150 S.E.2d 563. The court cites spring guns as the paradigmatic example of a man-trap.

Additional rules reiterate the limited duty landowners owe to licensees: (1) an owner owes no duty to a licensee to inspect the premises or to prepare a safe place for his reception, *Atlantic Coast Line RR Co. v. O'Neal,* 180 Ga. 153, 178 S.E. 451 (1934); (2) the artificial nature of the premises is of no consequence, *Fickling v. City Council of Augusta,* 110 Ga.App. 330, 138 S.E.2d 437 (1964); and (3) willful and wanton behavior "import premeditation or knowledge and consciousness that injury will result." *Cook v. Southern RR Co., supra.*

When applying these rules, numerous Georgia courts have summarily determined that a pond, either natural or man-made, cannot be deemed a man-trap. *E.g., Montega Corp. v. Grooms,* 128 Ga.App. 333, 196 S.E.2d 459 (1973); *Crews v. Slappey,* 110 Ga.App. 496, 138 S.E.2d 919 (1964); *Flickling, supra.* In each, the decision was reached despite the emotive feature of the death of a child. As the *Montega* court quotes:

> "A person who creates or maintains a pond of water upon private premises is under no duty to maintain it in a condition of safety ... [for persons] who, with the mere acquiescence or knowledge of the owner but without express and implied invitation, come upon the premises and go into the pond."

*Montega, supra* 128 Ga.App. at 337, 196 S.E.2d 459, *quoting St. Clair v. City of Macon,* 43 Ga.App. 598, 159 S.E. 758 (1931).

Nye strives to distinguish his situation by focusing on the allegedly submerged stumps within the lake and by relying on somewhat more equivocal language in the cases.

The *Crosby* court states that willful or wanton peril:

> may result from the knowledge on the part of the owner of the existence of a dangerous or hazardous condition coupled with a conscious indifference to the consequences, so that a deliberate intent to inflict injury is inferable ... or from a dangerous condition hidden with sufficient cover to obscure it or to render it unobservable to one who approaches it.

*Crosby v. Savannah Elec. & Power Co., supra* 114 Ga.App. at 198, 150 S.E.2d 563. In accordance with that statement, Georgia cases also recognize, "it is usually wilful or wanton not to exercise ordinary care to prevent injuring a licensee who is actually known to be, or reasonably is expected to be, within range *of a dangerous act being done." Higginbotham v. Winborn, supra* 135 Ga.App. at 756, 218 S.E.2d 917 (emphasis in original).

Plaintiff attempts to rely upon these statements as establishing a duty of ordinary care. However, the cases are clear that the duty to warn a licensee arises only in limited situations. A failure to warn can be equated with willful and wanton behavior only when two prerequisites are met: (1) the hidden peril must be connected with a dangerous *activity* rather than a static condition, and (2) the defendant must have actual knowledge of the hidden peril.

If courts disregard either of these strict limitations, they effectively create a duty on landowners to inspect their property prior to the arrival of licensees and trespassers and to give warning of potentially dangerous conditions on the land. While some may argue the benefits of such a rule, it is clearly contrary to the Georgia Code and cases.[1]

---

1. *Bronesky v. Estech, Inc.,* 170 Ga.App. 724, 318 S.E.2d 194 (1984), is an illuminating example of the distinct duties of landowners because the plaintiff was on the premises as a business invitee, but reduced his status to that of a licensee at the time of the injury by straying only a few

■ Nye attempts to distinguish the pond cases by arguing that the hidden stumps and roots within the lake, and *not* the lake itself, constituted the man-trap. Although no case has dealt specifically with submerged stumps, similar cases require ruling that such stumps, if they existed, constituted a "statical condition" and that no duty to warn against them existed.

It is well established that the duty to warn extends solely to hidden perils connected with active operations: "A well-defined distinction runs through the cases between injuries caused by a statical condition and premises where dangerous active operations are being carried on." *Atlantic Steel Co. v. Cleaton,* 52 Ga.App. 502, 506, 183 S.E. 827 (1935). *Cleaton* provides an example of an active operation where a failure to warn was equated with willful and wanton behavior. There, the licensee was injured in an industrial machinery shop while delivering lunches to the employees.

In contrast, these stumps are static. *See, e.g., Bronesky v. Estech, Inc.,* 170 Ga.App. 724, 318 S.E.2d 194 (1984) (a deteriorated wooden loading ramp at defendant's warehouse held to be static condition); *Higginbotham v. Winborn, supra* (a fallen tree in defendant's backyard); *Handiboe v. McCarthy,* 114 Ga.App. 541, 151 S.E.2d 905 (1966) (a swimming pool with accumulated leaves and debris which made the bottom of the pool unusually slippery, preventing a child from climbing out of the pool after falling in); *Crews v. Slappey, supra* (a lake with floating table tops which the deceased children attempted to use as rafts).

■ Apart from the fact that the alleged hidden perils were static, summary judgment is proper because Nye has not established that the defendants had actual knowledge *of the stumps,* as opposed to the lake itself. While constructive knowledge of the presence of the licensee is sufficient, actual knowledge of the *peril* is required. *See Crosby, supra; Cleaton, supra.* Any lesser standard, such as constructive knowledge of the peril, essentially becomes a duty to inspect the premises which is expressly rejected by the Georgia Code and courts.

Regarding the knowledge of the defendant, plaintiff's brief states:

The defendant, likewise, offers no evidence that it did not know of the existence of the submerged stumps and roots in the lake which created a dangerous and hazardous condition and a hidden peril to swimmers. A jury could infer from all the evidence that it had such knowledge.

Plaintiff's Opposition to Defendant's Motion for Summary Judgment, pp. 9–10.

The defendant did not excavate the property which created the lake. Absent some further facts, an inference that defendant knew of the existence of the stumps is merely speculative. Because actual knowledge of the peril complained of is an essential element of plaintiff's cause of action, and because he has failed to offer *facts* establishing that element, summary judgment is proper under *Celotex Corp. v. Catrett, supra.*

Defendant's lack of knowledge distinguishes this situation from the "stairwell cases" Nye relies on for requiring that a jury determine whether the stumps constituted a hidden peril. *McKenna v. Jordon, supra* (holding that an unfinished front porch at the top of a flight of stairs could be characterized as a hidden peril); *Bohn v. Beasley, supra* (holding that a defectively designed stairway in an apartment building could be characterized as a hidden peril). *See Powell v. Watson,* 176 Ga.App. 559, 337 S.E.2d 403 (1985) (distinguishing *McKenna* on the basis of lack of actual knowledge, in a case involving the back steps to a private home).

**(D) Recreational Use Statute**

■ While the Court's decision will not be based upon an application of the Georgia Recreational Property Act, O.C.G.A.

---

feet from his "invitee-sphere." He was injured when the wooden loading ramp on which he sat, while waiting to have his truck unloaded, collapsed. The court ruled that the ramp was a static condition and held that the defendant owed no duty to make it safe or to warn plaintiff/licensee of its dangerousness.

**1226**

§ 51–3–20 *et seq.* ("RPA"), it is clear that, if the RPA did apply, Union Camp's duty to Nye would have been *narrower* than the duty owed to a licensee. The RPA states in part that an owner covered by its provisions does not:

(1) Extend any assurance that the premises are safe for any purpose;

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed; or

(3) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons.

O.C.G.A. § 51–3–23. Georgia courts recognize that these duties are narrower than the duties owed to licensees. *Herring v. Hauck, supra.*

## CONCLUSION

Nye seeks to recover damages from a defendant landowner. However, that landowner's duty of care to Nye was extremely limited because it is impossible to find that Nye was more than a bare licensee at the time of his injury. The lake itself cannot be found to be a man-trap. The stumps within the lake are static conditions and cannot be found to constitute a hidden peril. And there is insufficient support to infer that defendant had actual knowledge of the stumps alleged to be within the lake. Accordingly, Union Camp was under no duty to make the premises safe, nor to provide warning of any conditions which are now alleged to have caused injury. Defendant's motion for summary judgment is GRANTED.

The Clerk of the Court is directed to enter an appropriate judgment of dismissal on behalf of Union Camp Corporation and against plaintiff.