## 24640. ATLANTIC STEEL COMPANY *v.* CLEATON.

DECIDED JANUARY 31, 1936.

*Neely, Marshall & Greene,* for plaintiff in error.
*Burress & Dillard,* contra.

MacINTYRE, J. N. L. Cleaton Jr., a minor fourteen years of age, suing by his next friend, brought an action against the Atlantic Steel Company to recover damages for personal injuries. Without passing on the general demurrers, the court sustained certain of the special demurrers, and ordered that the case be "dismissed unless plaintiff shall amend within twenty days." After the plaintiff had amended within the time allowed, the defendant demurred generally and specially to the petition as amended. The judgment was: "Defendant's demurrers to plaintiff's petition as amended are hereby overruled." The exception is to this judgment.

By paragraph, the substance of the petition as amended is as follows: (3) "At the time herein referred to, petitioner was employed by Mr. and Mrs. Milton O'Dell to work in and about their lunch-room." (4) "Petitioner's said employers furnished lunches to employees of defendant in defendant's place of business, and part of petitioner's duties was to deliver lunches to employees of said defendant, and, after said lunches were consumed, to collect the dishes in which they were delivered and to return them to his employers, and also to collect for said lunches." (5) "The defendant herein gave said O'Dells permission to furnish and deliver lunches to its employees in its place of business, and to collect up the dishes in which said lunches were served, and to collect for said lunches from said employees." (This paragraph was amended to aver that said permission "included permission to the employees of said O'Dell to furnish lunches while working in the service and employ of said O'Dell;" and "by setting out the following as constituting the permission given said O'Dell to serve lunches to its employees:

'Atlantic Steel Company. No. 14, Until December 31, 1934.

'Pass Mr. O'Dell and Helpers. Bring lunches in to Plant Department.

'Good for this date only.

'Atlantic Steel Company. By N. C. Harrison (Signed).)'"

(6) "It is further shown that at the time petitioner was injured . . , and for a period of four months previous to said time, he had been delivering lunches to defendant's employees in its place of business, and collecting dishes, etc., for said O'Dells."

(7) About noon .on March 9, 1934, petitioner "delivered lunches to employees of the defendant . . at his place of business; and as soon as said employees had finished their lunches, he began collecting the dishes, and while doing so was injured in the manner that will hereinafter be shown." (8) At the time he was injured petitioner "was passing between some of the machines where he was accustomed to go, which machines were used by the defendant . . in the manufacture of its articles of commerce. The machines referred to are about three to four feet high, and have a box on them about eight inches square by six inches high, which box contains an acid, lye, or other chemical used by defendant in its manufacturing process." This paragraph was amended "by showing that the place . . where plaintiff was walking when hurt was a walkway across the rear of said mill, about 20 to 25 feet from the rear wall of the nail-mill of defendant company. Said place was the usual walkway or passage between lines of machines at the rear of said mill, which were used by said company to clean wire used in the manufacturing of nails, the place where he was walking being a kind of aisle used when passing between lines of said machines, and had been for several months prior to the time he was hurt regularly used by plaintiff while delivering lunches, collecting dishes, etc., in defendant's place of business, and was also used as a walkway or passageway by others when passing between said machines."

(9) "At the time herein referred to, which was lunch time for some of defendant's employees, the machines by which petitioner was passing were not in operation. In the operation of said machines the chemical substance referred to often gets on the machine, and at the time . . mentioned there was some of this substance on one of the machines. . . As petitioner passed said machine,

one of defendant's colored employees, whose duty it was to keep said machines cleaned off, swept said substance off said machine, and in doing so swept it into petitioner's face and eyes, and thereby injured him." (10) "Petitioner shows that the colored servant herein referred to was an employee of the defendant, . . and at the time . . alleged was working in and about defendant's business." (11) Alleges serious injury to petitioner's eye by said chemical substance. (15) Alleges permanent impairment to ability to work to an extent of at least fifty per cent. (16) "Petitioner shows that defendant's said servant ought to have known, and by the exercise of due care could have known, of petitioner's presence at and near said machine; that there was nothing to prevent his seeing petitioner while petitioner was passing said machine; that defendant's said servant did not warn petitioner that he intended to sweep said substance off said machine; that he did not warn petitioner of the character of the substance he was sweeping off said machine, and petitioner did not know that he intended to sweep off said machine while petitioner was passing it, but believed that it was safe for him to pass said machine, and to collect up the dishes, as had been his custom to do." The following amendment was added to this paragraph: "That defendant's said servant was not watching out to see whether or not any one was passing by said machine while sweeping off said substance; that he was not watching out to see if any one was near, or approaching, said machine while he was sweeping it off; that he was paying no attention to where he was sweeping said substance, and that by looking where he was sweeping it he could have seen plaintiff walking by and near said machine; that he was not watching out to see that he did not sweep said substance on plaintiff; that he was giving no attention to the manner in which he was performing his duty of sweeping said machine, so as to prevent sweeping said substance on plaintiff; that if he had looked where he was sweeping said substance before doing so, he could have seen plaintiff passing at and near said machine, all of which acts petitioner alleges were wilful, wanton and negligent." (17) "Petitioner alleges that the defendant was negligent in the following manner, and that each and all of said alleged acts of negligence were wilful and wanton, and contributed to and were the proximate cause of the injuries . . alleged: (a) In that defendant's said serv-

ant, at the time and place herein referred to, was not watching out so as to keep from sweeping said substance into · . . petitioner's eyes. (b) In that defendant's said servant did not take the necessary precaution to keep said substance from falling into petitioner's face and eyes. (c) In that defendant's said servant did not warn petitioner that he intended to sweep said substance off said machine and in your petitioner's direction, so that . . petitioner could have avoided being injured. (d) In that said servant did not warn petitioner of the dangerous character of the substance that he was sweeping off of said machine. (e) In that said servant negligently, thoughtlessly, and carelessly swept said dangerous substance into petitioner's face and eyes as petitioner was passing by said machine."

The demurrer was substantially as follows:

(1) The petition sets out no cause of action. (2) "The facts in said declaration impose no liability upon defendant." (3) Defendant demurs specially to paragraph 5 of the amendment to paragraph 16 of the petition, and moves to strike the words, "all of which acts petitioner alleges were wilful, wanton, and negligent," on the ground that such allegation is a conclusion of the pleader and not consistent with the facts alleged. (4) Defendant demurs specially to paragraph 6 of the amendment to paragraph 17 of the petition, and moves to strike the words "were wilful and wanton," on the ground that this is a conclusion of the pleader.

We quote from *Petree* v. *Davison-Paxon-Stokes Co.*, 30 *Ga. App.* 492 (58 S. E. 1060), as follows: "A licensee is a person who is neither a customer, nor a servant, nor a trespasser, and does not stand in any contractual relation with the owner of the premises, and who is permitted expressly or impliedly to go thereon merely for his own interest, convenience, or gratification. See *Crossgrove* v. *Atlantic Coast Line R. Co.*, [30 *Ga. App.*] 462, and cases cited. 'The principle on which the courts distinguish a case of implied license from one of implied invitation, in the technical sense, seems to be this: Speaking generally, where the privilege of user exists for the common interest or mutual advantage of both parties, it will be held to be a case of invitation; but if it exists for the mere pleasure and benefit of the party exercising the privilege, it will be held to be a case of license.' 17 R. C. L. 566, § 79. . . In the case of a trespasser 'liability arises only where the injury has

been occasioned by the wilful and wanton negligence of the proprietor or owner. No duty of anticipating his presence is imposed; and, as was pointed out by this court in *Charleston & W. C. Ry. Co.* v. *Johnson,* 1 *Ga. App.* 441 (57 S. E. 1064), the duty to use ordinary care to avoid injuring him after his presence and danger is actually known is, in point of fact, merely the duty not to injure him wantonly or wilfully.' In the case of a licensee 'there is a slightly higher duty on the part of the owner or proprietor of the premises. He must not wantonly and wilfully injure the licensee; *and since his presence as a result of his license is at all times probable, some care must be taken to anticipate his presence, and ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated* [italics ours]. The fundamental concept in this class of cases, as in that of trespassers, is of a liability only for wilful or wanton injury; but it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or reasonably is expected to be, within the range of a dangerous act being done. See *Southern Ry. Co.* v. *Chatman,* 124 *Ga.* 1026 (53 S. E. 692, 6 L. R. A. (N. S.) 283).' . . Both of the above quotations are from *Mandeville Mills* v. *Dale,* 2 *Ga. App.* 607, 609 (58 S. E. 1060)."

"It is usually wilful or wanton not to exercise ordinary care to prevent injury to a person who is actually known to be or reasonably expected to be *within the range of a dangerous act being done. Ashworth* v. *Southern Railway Co.,* 116 *Ga.* 635, 638 (43 S. E. 36, 59 L. R. A. 592)." *Atlantic Coast Line R. Co.* v. *O'Neal,* 180 *Ga.* 153 (178 S. E. 451). "A well-defined distinction runs through the cases, between injuries caused by a dangerous statical condition and premises where dangerous active operations are being carried on. A much higher degree of care is necessary in protecting children in the latter case than in the former." Hannan *v.* Ehrlich, 102 Ohio St. 176, 187 (131 N. E. 504). The doctrine stated in the Hannan case was recognized in the *O'Neal* case. The petition speaks for itself, and it would answer no good purpose to recapitulate at length its pertinent allegations. Under those allegations the injured boy can not possibly occupy any more disadvantageous position than that of a licensee. The petition sufficiently avers facts which are usually considered as constituting wilful and

wanton negligence. It avers, in effect, that the defendant's servant, and through him the defendant, should reasonably have anticipated the presence of the boy within the range of the dangerous act, and that in this situation they failed to exercise ordinary care to prevent injuring him. We hold that the court did not err in overruling the demurrers to the petition as amended.

*Judgment affirmed. Guerry, J., concurs. Broyles, C. J., dissents.*

BROYLES, C. J., dissenting. The amended petition, properly construed (most strongly against the plaintiff), shows that the plaintiff when he was on the defendant's premises was a mere licensee; and it is well settled by numerous adjudications of the Supreme Court, this court, and courts of other jurisdictions, that the owner of premises will not be liable for an injury to a licensee unless it was caused by wilful and wanton negligence of the owner. The instant petition fails to allege that either the defendant, or its negro servant who swept off the chemical substance from the machine in question, had either actual or constructive knowledge of the harmful and dangerous nature of the substance; and the petition fails to allege that the defendant or its servant knew or ought to have known that the sweeping of the substance from the machine was a dangerous act, or that it would probably result in injury to the plaintiff. Therefore it is my view that the petition failed to show that the plaintiff's injury was occasioned by the wilful and wanton negligence of the defendant. I think the court erred in overruling the general demurrer to the petition.