A99A0471. FRANK MAYES & ASSOCIATES, INC. et al.
v. MASSOOD.
(518 SE2d 903)

SMITH, Judge.

We granted this interlocutory appeal to consider the trial court's denial of motions for summary judgment by defendant-appellants Frank Mayes & Associates, Inc., Frank D. Mayes, F. Chip Mayes (collectively "Mayes"), Malon D. Mimms, Malon D. Mimms, Jr., Mimms Family, L.P., Malon D. Mimms Family, L.P., and Mimms Enterprises, Inc. (collectively "Mimms"). Because plaintiff-appellee Louis E. Massood was either a trespasser or licensee on appellants' property at the time of his injury and he has shown no breach of the limited duty owed to him, we reverse and direct that the trial court enter summary judgment in appellants' favor.

The relevant facts of this case are not in dispute. Mayes leased a commercial building from Mimms to carry on its sound and light production business. The building was a warehouse with offices in the

front section and a lowered ceiling over the office area. The attic or loft formed by the office ceiling was floored with plywood and used for the storage of old equipment. It had no permanent means of access such as steps or a fixed ladder; it was reached, when necessary, with a folding ladder.

Defendant Shawn Martin, not a party to this appeal, is a sound engineer who worked for Mayes as an independent contractor, working on sound equipment and preparing it for concerts and events. At the time of the incident, Massood had no connection with Mayes other than friendships with several people who worked for Mayes, including Massood's roommate David Creed. Massood once painted a stage for Chip Mayes, but that was the only time he had ever been on the premises for a business purpose. He testified that he had been in the attic area on two earlier occasions visiting with his friends when they were "on break"; according to Massood, they just sat up there and talked. He did not know if Mayes was aware that he had been up in the attic.

On Saturday, August 12, 1995, Massood came to Mayes's business to meet Martin for lunch. Martin was the only person on the premises at the time. When he arrived, Massood immediately told Martin that he suspected Creed had stolen money and property from his house and had hidden them somewhere in the warehouse. Massood acknowledged that he was "mad"; Martin testified that Massood was "very heated" and "on a mission to find his stolen property." Massood went through the office area and through a closed door marked "employees only" into the warehouse to look for the items. While Massood contends Martin gave him permission to enter the warehouse, Martin testified that he did not stop Massood because he did not want a confrontation.

Massood searched the warehouse briefly and then climbed up on a table or shelves to get into the attic area. As he walked toward the back of the attic, he stepped off the plywood flooring and between the ceiling joists. He fell through the ceiling below into a bathroom, injuring himself.

1. We must first consider Massood's legal status while on the premises, because the duty of an owner or occupier of land to a person injured there depends upon the injured person's status as an invitee, licensee, or trespasser. The duty owed to an invitee on land is established by statute:

Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

OCGA § 51-3-1. In contrast,

> (a) A licensee is a person who: (1) Is neither a customer, a servant, nor a trespasser; (2) Does not stand in any contractual relation with the owner of the premises; and (3) Is permitted, expressly or impliedly, to go on the premises merely for his own interest, convenience, or gratification.
>
> (b) The owner of the premises is liable to a licensee only for willful or wanton injury.

OCGA § 51-3-2.

But "[a] trespasser is one who, though peacefully or by mistake, wrongfully enters upon property owned or occupied by another. [Cits.]" *Barber v. Steele*, 133 Ga. App. 290, 292 (1) (211 SE2d 133) (1974). An owner or occupier of real property owes no duty to keep the premises safe for a trespasser present without his knowledge, even if the owner or occupier generally knows that it is customary for trespassers to enter his property. Once the trespasser's presence becomes known, the only duty is to refrain from wilfully and wantonly injuring him. Id.

The evidence presented here shows that Massood entered Mayes's premises, went into a warehouse area marked "employees only," and used a piece of furniture to climb up into a normally inaccessible attic to look for his personal property. At the time he fell through the bathroom ceiling, Massood clearly was not an invitee.

Massood testified that Martin gave him permission to search the warehouse and the loft, and he contends this gave him the status of a licensee. Martin denies this allegation, but the factual dispute is immaterial to our decision here.[1] Whether the standard for liability to a licensee or to a trespasser is applied to the facts here, Massood cannot recover.

2. When an alleged injury is caused by a static condition, as opposed to dangerous active operations or active negligence, "no duty arises with reference to the licensee of keeping the usual condition of the premises up to any standard of safety, except that they must not contain a pitfall, a mantrap, or other things of that character." (Citations and punctuation omitted.) *Davis v. Scott*, 232 Ga. App. 493, 494 (502 SE2d 332) (1998). See also *Hawkins v. Brown*, 228 Ga. App. 311, 312-313 (2) (491 SE2d 423) (1997).

"The doctrine of mantrap or pitfall is rested upon the theory that the owner is expecting a trespasser or a licensee and has prepared

---

[1] Mayes argues that Martin's knowledge or permission cannot be imputed to Mayes because the evidence is uncontroverted that Martin was an independent contractor and not Mayes's agent or employee. But we do not reach this issue.

the premises to do him injury." (Citations and punctuation omitted.) Id. at 313. It is a "contrivance so dangerous in character as to imply a disregard of consequences or a willingness to inflict injury." (Citations and punctuation omitted.) Id. See, e.g., *McKinsey v. Wade*, 136 Ga. App. 109 (220 SE2d 30) (1975) (vending machine booby-trapped with dynamite to discourage theft). Such hazards as excavations, open manholes, and the like maintained "so close to the traveled way as to constitute a peril to those who may accidentally step aside from the traveled way," are considered to fall within this definition. *Hawkins*, supra at 313.

Massood contends the condition of the attic floor constituted a mantrap or pitfall, but every case cited by Massood is distinguished by the close proximity of the alleged mantrap or pitfall to a well-traveled area where people reasonably could be expected to step accidentally aside and into the hazard. In *Central of Ga. R. v. Ledbetter*, 46 Ga. App. 500 (168 SE 81) (1933), the defendant cut away and left unguarded a large opening in a plank walkway used for access to moored vessels. *Harvill v. Swift & Co.*, 102 Ga. App. 543 (117 SE2d 202) (1960), involved an invitee, not a licensee, who fell into an open manhole eight to ten inches from the edge of the defendant's loading dock. In *MacKenna v. Jordan*, 123 Ga. App. 801 (182 SE2d 550) (1971), the front steps of a home led directly to a 12-foot-deep hole where the uncompleted porch should have been. In *Mathis-Akins Concrete Block Co. v. Tucker*, 127 Ga. App. 699 (194 SE2d 604) (1972) (physical precedent only), a night watchman fell into an open pit between two railroad tracks that was ordinarily concealed by a railcar. *Wilbanks v. Echols*, 209 Ga. App. 210 (433 SE2d 134) (1993) (physical precedent only), involved the excavation of an 18-foot deep pit adjoining and partially in the public right-of-way and the injury of a volunteer firefighter who fell into it while answering a call.[2]

In contrast, the attic from which Massood fell was virtually inaccessible by ordinary means and was located far from any area that passersby or casual visitors reasonably could be expected to traverse. And this passive and static condition in an ordinarily inaccessible attic does not demonstrate wilful or wanton conduct, since Massood "was not obliged or induced to step across it by any act of defendants." *Hawkins*, supra at 314.

In summary, Massood came to appellants' business on a weekend while the building was occupied only by an independent contractor. Then, on a personal errand wholly unconnected with Mayes's business, he went into a warehouse restricted to employees, used a

---

[2] Cases of injuries occurring on land immediately adjacent to a public way involve a different standard. See *Intl. Paper Realty Co. v. Bethune*, 256 Ga. 54, 55 (344 SE2d 228) (1986).

420

piece of furniture to gain access to an ordinarily inaccessible area, and then walked to the rear of that area, where he fell. His status at the time of his injury was that of a trespasser or at best a licensee, and appellants were obligated only to refrain from wilfully or wantonly inflicting injury or knowingly allowing him to be injured by a mantrap or pitfall. No evidence was presented that appellants wilfully injured Massood or maintained a mantrap or pitfall in an area where he could have been expected to travel, and the trial court consequently erred in failing to grant appellants' motion for summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment reversed. Pope, P. J., and Eldridge, J., concur.*

Decided June 3, 1999.

*Webb, Carlock, Copeland, Semler & Stair, Edward A. Miller, Brian J. Amero*, for appellants.

*Stevens & Associates, Ronald S. Stevens, James B. McClung*, for appellee.