A99A1938. MANSFIELD et al. v. COLWELL CONSTRUCTION COMPANY.
(530 SE2d 793)

SMITH, Judge.

James Mansfield and Vicki Golden (collectively "Mansfield") as the natural parents of their deceased son, Shane Mansfield, brought a personal injury action against Colwell Construction Company ("Colwell"), the operator of a rock quarry, the site of Shane's tragic death. Chris Wilson, the driver of the minivan in which Shane had been a passenger, was also sued. The gist of the complaint was that the joint negligence of both defendants combined to proximately cause Shane's death.

After cross-claiming against Wilson, Colwell moved for summary judgment on several grounds. Colwell argued that the decedent's injuries were caused by unforeseen intervening acts of others, that Shane failed to exercise ordinary care for his own safety, and that he

failed to use such ordinary care as would have avoided the consequences of any alleged negligence of Colwell. Colwell also claimed it had denied the public a right of access to its property and denied the existence of a public road up to its spoil area where the incident purportedly took place. Finding no genuine issues of material fact remaining for jury resolution, the trial court granted summary judgment to Colwell. Mansfield appeals that determination. Because we find that Colwell was entitled to summary judgment, we affirm.

This case arose after Wilson and Shane proceeded up into an unpaved, unlit remote area located within the Whitepath quarry, a rock quarry and rock-crushing facility operated by Colwell. This quarry consisted of about 600 acres north of Ellijay. Within the quarry was a large mound of dirt or "spoil area" artificially created from excess material extracted from the ground during mining operations. In their complaint and throughout discovery, the plaintiffs identified the same area as a "scenic plateau." Although Colwell concedes that its spoil area afforded a good view of the nearby mountains and was visible from a public highway, the manager of the quarry testified that this area was not open to the general public. Nor could this area be directly accessed by means of the public road that went through Colwell's property. Colwell had used this spoil area for 12 to 15 years and had seeded the top of the mound with grass for erosion control.

Wilson, who had never previously been to this quarry, testified that he had absolutely no recollection of anything that occurred after leaving the driveway of Shane's father's home. On the night in question, piles of waste material were on the front end of the spoil area, thereby effectively blocking the pathway leading to the top. James Mansfield surmised that a pile of rocks in the middle of the road created an obstruction which forced the driver to reverse course; then during an attempt to turn around, the van's rear wheels may have slid off the edge of the bluff. Shane's death probably occurred after the van plunged off the edge of Colwell's spoil area, falling approximately 200 feet to the ground. James Mansfield testified that he noticed some car tracks down one side of the embankment.

Hours before this incident, Shane, age 20, and Wilson, then age 19, had gone to a local swimming area near Shane's father's house. According to the testimony of several witnesses, while at the swimming area, Wilson and others were drinking beer and smoking marijuana. Before the group dispersed at about 5:00 or 6:00 p.m., while it was still daylight, Shane's stepmother, Faye Mansfield, told Wilson she would be driving his van back to the house because she was concerned about his drinking and, for that reason, afraid to let him drive. After changing clothes, Wilson and Shane left nearly immediately with Wilson driving the 1987 Dodge Caravan owned by Wilson's

father-in-law. According to both Wilson and Faye Mansfield, Shane knew that Wilson did not have a driver's license. Several hours later, at about 10:30 or 11:00 p.m., Wilson's in-laws informed James Mansfield and his family that Wilson had been involved in an accident and Shane was missing. Shane's body was found five days later at the bottom of the quarry's spoil area. Wilson, who pled guilty to involuntary manslaughter, was unable to recall any of the details relating to the incident.

To support its motion for summary judgment, Colwell offered the depositions of Carlton Colwell, the property owner, and Steven Colwell, the operator of the quarry.[1] Both Colwells denied having any knowledge about any public use of the quarry's spoil area. No evidence showed that Colwell had given its express permission to Wilson or Shane to be on or near its spoil area on a Saturday night, during a time when the quarry was closed. Although Colwell apparently had not posted any warning signs or "no trespassing" signs on the road leading to its spoil area, Steven Colwell denied having any awareness of any other instance when members of the general public had gone out onto that bluff. He testified that he had never seen anyone out there and that "we don't allow people on our property."

Mansfield offered the affidavit of Keith Tipton and the testimony of two others to attempt to prove that this so-called scenic plateau had been used for recreational purposes, including four-wheeling. Relying on such evidence, Mansfield contends that Shane was present on Colwell's property as a licensee. Colwell, however, counters that the decedent and Wilson were mere trespassers, but even if they were licensees, it owed only a limited duty to them. See OCGA §§ 51-3-1; 51-3-2.

By definition, a licensee is one who is not a customer, a servant, or a trespasser, who does not stand in any contractual relation with the owner of the premises, and is permitted, expressly or impliedly, to go on the premises merely for his own interests, convenience, or gratification. OCGA § 51-3-2. The landowner or occupier of the premises owes a duty to a licensee only to avoid knowingly letting him run upon a hidden peril or wilfully causing him harm. *Patterson v. Thomas*, 118 Ga. App. 326, 327 (163 SE2d 331) (1968); see *London Iron &c. Co. v. Abney*, 245 Ga. 759, 761 (2) (267 SE2d 214) (1980). The duty owed to a trespasser is to avoid wilfully or wantonly injuring him. *Atlantic Steel Co. v. Cleaton*, 52 Ga. App. 502, 506 (183 SE 827) (1936) (physical precedent only). Even when a property owner knows that it is customary for trespassers to come upon the premises, the duty owed is merely "to refrain from wilfully and wantonly injuring

---

[1] Carlton Colwell owns the property and leases it to Colwell Construction Company.

him once his presence [is] known; and no duty of anticipating the decedent's presence [is] imposed. [Cit.]" *Barber v. Steele*, 133 Ga. App. 290, 292 (1) (211 SE2d 133) (1974).

Even assuming solely for the sake of argument that Shane had the legal status of a licensee, and further assuming that the hazardous condition was either the pile of waste material consisting of rock or dirt which blocked the path to the spoil area or was the spoil area itself, Colwell could be held liable only in the event that four conditions were satisfied. *Patterson*, supra at 328. If the pile of rock or dirt obstructing the path to the spoil area comprised the hazard on Colwell's property, then Mansfield had to prove: (1) Colwell knew or should have known that the pile of rock or dirt involved an unreasonable risk of harm; (2) Colwell should have expected that the pile of rock or dirt would not be discovered; (3) Colwell failed to exercise reasonable care to make the condition safe or to warn about it; and (4) Shane did not know or have reason to know of the condition and the risk involved. Id. Since a huge pile of rock or dirt blocking a pathway is readily distinguishable from an obscured hole plunging unseen down into the earth, we cannot agree that Mansfield has shown that this pile constituted an unreasonable risk of harm and that Colwell should have expected that something so patently obvious would not be discovered. Similarly, if the alleged hazardous condition was the spoil area itself, this was an open and obvious condition visible from a nearby highway and also does not satisfy the four requirements set forth in *Patterson*, supra.

Nor can we agree that this condition on the land constituted a mantrap designed by Colwell to ensnare the unwary. "The doctrine of mantrap or pitfall is rested upon the theory that the owner is expecting a trespasser or a licensee and has prepared the premises to do him injury. [Cit.]" *Crosby v. Savannah Elec. &c. Co.*, 114 Ga. App. 193, 198 (150 SE2d 563) (1966). Examples of a mantrap include a spring gun or a trap or "a dangerous condition hidden with sufficient cover to obscure it or to render it unobservable to one who approaches it." Id. A defendant's liability for an injury resulting from a mantrap or pitfall presupposes a lack of knowledge about the hidden or concealed hazard on the part of the licensee or trespasser. *Francis v. Haygood Contracting*, 199 Ga. App. 74, 75 (1) (404 SE2d 136) (1991); see *Frank Mayes & Assoc. v. Massood*, 238 Ga. App. 416, 419 (518 SE2d 903) (1999). Moreover,

> [s]o long as it is not so close to the traveled way as to constitute a peril to those who may accidentally step aside from the traveled way, a party may excavate upon his land or have holes thereon and this right is not subject to abridgement by parties happening to go out of their way and receiving injuries. [Cits.]

*Hawkins v. Brown*, 228 Ga. App. 311, 313-314 (2) (491 SE2d 423) (1997). Here, the passive or static condition of a large pile of rock or dirt positioned in the middle of a private pathway well off the public road did not constitute wilful or wanton conduct, and no evidence suggested that Colwell acted in such a way as to oblige or induce anyone to proceed toward this mound. Id. at 314.

Wilson, deposed in prison, entered guilty pleas under *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970) to driving under the influence of marijuana and involuntary manslaughter. Wilson pled guilty to underage possession of alcohol and misdemeanor possession of marijuana. Despite entering his *Alford* plea, Wilson testified that he did not know for certain that he had been driving the van when it plunged off the edge of the bluff.

Further, although this quarry was only about 20 miles from Mansfield's home, Mansfield offered not a shred of evidence regarding the intervening activities or the whereabouts of Wilson and Shane during the several-hour block of time between the time they left James Mansfield's home and when Wilson was discovered wandering alone along the lower road beneath the spoil area.

No accident reconstruction evidence or expert testimony was offered to prove the actual cause of the van's precipitous plunge off the bluff. Mere speculation that Wilson probably drove the van too close to the edge of the hillside was not sufficient to show culpability on the part of Colwell, especially in light of the overwhelming and uncontroverted evidence of Wilson's alcohol and marijuana consumption before the incident. See *Nelson v. Polk County Historical Society*, 216 Ga. App. 756, 757 (2) (456 SE2d 93) (1995). The record does not contain an autopsy report or any probative evidence as to the official cause of Shane's death. See *Grantham v. Amin*, 221 Ga. App. 458, 459 (471 SE2d 525) (1996) (absence of evidence as to proximate cause entitled defendant to summary judgment).

When an injury could have been avoided by the exercise of ordinary care for one's own safety, recovery is generally foreclosed. *Sims v. Willoughby*, 179 Ga. App. 2, 4 (345 SE2d 626) (1986); *Shuman v. Mashburn*, 137 Ga. App. 231, 237 (3) (223 SE2d 268) (1976) (physical precedent only). In both *Sims* and *Shuman*, the grant of summary judgment was found appropriate because of overwhelming evidence that the plaintiffs could have avoided the risk of injury by exercising even slight care. Id. In this case, Shane could likely have avoided injury by choosing not to be a passenger in a vehicle being operated by an unlicensed driver who had recently consumed both beer and marijuana, who was proceeding into an unlit, unpaved area, and who apparently failed to take precautions to avoid driving or backing his vehicle off the edge of an elevated plateau. See *Watson v. Marshall*, 212 Ga. App. 206, 208 (2) (441 SE2d 427) (1994).

Although the underlying facts of this case are unquestionably tragic, the evidence contained in the record before this court does not show that Colwell breached a duty of care to the decedent and that the breach proximately caused the injuries sustained. *Davis v. Scott*, 232 Ga. App. 493, 494 (502 SE2d 332) (1998). Under these circumstances, summary judgment was appropriate. *Francis*, supra at 74 (1).

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MARCH 9, 2000.

*Jones, Copeland, Lefkowitz & Greer, Taylor W. Jones*, for appellants.

*Hicks, Casey, Young & Barber, William T. Casey, Jr., Teri D. Alpert*, for appellee.

