**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and DAVIS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 28, 2025**

# In the Court of Appeals of Georgia

A25A0963. MUNRO et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.

BROWN, Chief Judge.

This is the second appearance of this wrongful death action brought against the Georgia Department of Transportation ("DOT") by the parents of Ashleigh Munro, who was killed when the vehicle in which she was a passenger collided with a tractor-trailer at the intersection of Thigpen Trail and State Route 37 in Colquitt County. In *Munro v. Dept. of Transp.*, 368 Ga. App. 785 (890 SE2d 349) (2023) ("*Munro I*"), we affirmed the trial court's dismissal of the Munros' negligent-design claim for lack of subject matter jurisdiction,[1] but reversed its order dismissing the Munros' claim for

---

[1] The Munros alleged that the intersection had been negligently designed because the angle of the intersecting roads was 60 degrees. *Munro I*, 368 Ga. App. at 787 (3) (a). According to the Munros' engineering expert, "[s]kewed intersecting

negligent inspection. Id. at 787-791 (3), 791-792 (4). Upon remand, DOT moved for summary judgment on the negligent inspection claim, and the trial court granted the motion. The Munros appeal, arguing that the trial court erred in granting summary judgment because the evidence presented a fact issue as to whether DOT's failure to inspect and maintain vegetation at the intersection obstructed the drivers' visibility and contributed to the collision. For the reasons explained below, we reverse the grant of summary judgment.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing a grant or denial of summary judgment, we owe no deference to the trial court's ruling and we review de novo both the evidence and the trial court's legal conclusions. Moreover, we construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. In doing so, we bear in mind that the party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact.

angles at 60[ ] degrees or less create significant safety issues because vehicles are exposed to conflicting traffic for a longer time span, drivers are required to turn their heads considerably to see across the entire sight triangle, and lateral sight lines are often obstructed by the vehicle body."

(Citation and punctuation omitted.) *Hart v. Phung*, 364 Ga. App. 399, 400 (876 SE2d 1) (2022). So viewed, the record shows that on the afternoon of November 10, 2017, Ashleigh was a passenger in a Toyota driving southbound on Thigpen Trail in Colquitt County, at its intersection with State Route 37. The road was dry and the weather was clear. The driver of the Toyota, who does not remember anything about the accident, acknowledged that she may not have stopped at the stop bar on Thigpen Trail at its intersection with State Route 37 or, at a minimum, did not come to a complete stop at the stop bar. As the Toyota entered the intersection, a tractor-trailer driving eastbound on State Route 37 was also crossing the intersection, and the vehicles collided. Ashleigh died as a result of the injuries she sustained in the collision.[2]

In this action, the Munros allege that overgrown vegetation on the north side of State Route 37's intersection with Thigpen Trail obstructed visibility, creating a dangerous condition for drivers, and that DOT is liable for the negligent inspection and maintenance of the area. DOT moved for summary judgment on this claim, and in a four-sentence order that made no findings of fact, the trial court granted the

---

[2] Additional record evidence will be discussed as necessary to address the parties' appellate arguments.

motion, ruling that there are no genuine issues of material fact and that the undisputed facts, viewed in the light most favorable to the Munros, warrant judgment for DOT as a matter of law on the Munros' claim for negligent inspection or maintenance. This appeal followed.

1. The Munros contend that the trial court erred by granting summary judgment in favor of DOT because genuine issues of material fact exist with regard to whether reduced visibility from overgrown vegetation at the intersection contributed to the collision resulting in Ashleigh's death. We agree.

> To prove negligence, a plaintiff must establish four elements: duty, breach of that duty, causation, and damages. Negligence is not susceptible to summary adjudication except where the evidence is plain, palpable, and indisputable that the respondent cannot present any slight evidence on each essential element of the action in rebuttal to create a jury issue. Questions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and indisputable cases.

(Citations and punctuation omitted.) *Wang v. Dukes*, 368 Ga. App. 661, 664 (1) (890 SE2d 283) (2023). See also *Layfield v. Dept. of Transp.*, 280 Ga. 848, 849 (1) (632 SE2d 135) (2006) ("it is axiomatic that questions regarding proximate cause are

undeniably a jury question and may only be determined by the courts in plain and undisputed cases") (citation and punctuation omitted); *Hart*, 364 Ga. App. at 406-407 (2). In this case, DOT contends that the Munros' theory of causation is nothing but pure speculation, which is insufficient to overcome summary judgment. It bases this contention on three pieces of evidence: the driver of the Toyota has no memory of the accident; the driver of the tractor-trailer testified that he was not sure if any vegetation blocked his view; and

> the accident reconstructionists agree that, although vegetation may have blocked the drivers' view *before* they neared the intersection, [the driver of the Toyota] would have had a clear view of the oncoming tractor-trailer if she had stopped at the stop sign and looked to her right, and the tractor-trailer would have been able to see vehicles entering the intersection from at least 1,000 feet away.

(Emphasis in original.) But, DOT overlooks other evidence in the record from which a jury could conclude that both drivers had reduced visibility from the overgrown vegetation at the intersection, contributing to the collision. Accordingly, we cannot agree with DOT that the evidence is speculative or that the testimony upon which it relies demands summary judgment in its favor.

The tractor-trailer driver testified that it was the first time he had driven through the intersection of State Route 37 and Thigpen Trail and agreed that he was traveling over the speed limit. He confirmed that he saw an intersection sign on State Route 37 at some point on the right-side of the highway before its intersection with Thigpen Trail and that there were no buildings on the left-side of the roadway or other vehicles coming toward him in the westbound lane of State Route 37 that would have blocked his view. According to the driver, as he was approaching the intersection there were some bushes on his left, but he was not sure if they blocked his view or not: "I can't remember from right now. . . it was mainly just a field on both sides of me." As he neared the intersection, he did not see any cars or anything across the field, but just as he came upon the intersection the Toyota "was there. . . . It popped out of damn [no]where." He "never even saw the [Toyota] before impact" and confirmed that he was not able to honk his horn or brake his truck at all before impact; "[o]nly thing I did is grab[ ] the steering wheel, both feet on the brakes."

A witness to the accident, who had been driving directly behind the tractor-trailer for some time, deposed as follows:

> Well, I was following the semi truck and approaching [Thigpen] Trail and in a flash [the Toyota] just came across and then the truck hit it. . .

6

. It wasn't like it hit half of the car or anything like that. It took the car that had ran the red — stop sign was completely just covered by the truck in front of me. I don't know, I couldn't tell if the car ran the stop sign or was already stopped and pulled out. I can't swear to that because the weeds [on the left/north side, off the shoulder of State Route 37 westbound close to the stop sign] were too high. . . . I'm not sure if [the Toyota] was stopped at the stop sign and then pulled out or if it ran through because the weeds were too high at that intersection. And there was also some type of electrical power line system right there, too, so — but the weeds were too high for me to tell if that car was stopped or if it ran the stop sign.

The witness was about 50 to 75 yards from the Toyota when he first saw it, but did not see any portion of the vehicle until it was "in 37 West."

Photographs taken from the vantage point of the tractor-trailer driver as well as the Toyota driver just hours after the accident show vegetation blocking the view of both drivers upon their respective approaches to the intersection of Thigpen Trail and State Route 37. Additionally, the Munros' expert testified that because there was a sight-distance problem resulting from the angle of the intersection, it was imperative for DOT to keep the right-of-way clear and "kill th[e]" vegetation. By the time the Munros' expert visited the scene, the vegetation had been cleared but was growing back. The expert also presented evidence that from 2017 to February 22, 2021, the

rural intersection, which "average[d] daily volumes of only 1600 to 2600 vehicles per day," had experienced 27 angle-type crashes, resulting in 28 injuries and 2 fatalities.

An accident reconstructionist hired by defendants other than DOT, who visited the scene 11 days after the accident, opined that as the Toyota driver approached the stop bar on Thigpen Trail where it intersects with State Route 37, the bushes and trees on the southwest corner of Thigpen Trail "looking west down 37" — in combination with a blind spot in the Toyota — "caused an obstruction for [the Toyota driver's] field of view prior to reaching that stop bar." A second accident reconstructionist opined that he would have expected the Toyota driver to be able to see the tractor trailer "as she got up to the stop sign," but that the "shrubbery" and a fence on Thigpen Trail would have obstructed the driver's view as she looked to her right/westbound "down Highway 37[,]" starting at 200 feet from the stop sign to approximately 55 feet from the stop sign.

In this case — as in other vehicular accident cases where we have addressed similar sight-obstruction circumstances — although it is possible that a jury could determine that several factors contributed to the accident, given the testimony and evidence recounted above, "we cannot eliminate as a matter of law the obstruction in

line of sight caused by the [overgrown vegetation] as a proximate or concurring cause of the accident[.]" *Mayor and Aldermen of City of Savannah v. Herrera*, 343 Ga. App. 424, 433-434 (2) (808 SE2d 416) (2017). See, e.g., *Howard v. Gourmet Concepts Intl.*, 242 Ga. App. 521, 522 (1) (a) (529 SE2d 406) (2000). See also *Dept. of Transp. v. Owens*, 330 Ga. App. 123, 132 (2) (766 SE2d 569) (2014) ("[w]hile it is certainly possible that a jury may conclude that [the plaintiff] should shoulder all of the blame for the collision at issue, we cannot agree that no issue of material fact exists in this regard"). Compare *Mansfield v. Colwell Constr. Co.*, 242 Ga. App. 669, 673 (530 SE2d 793) (2000) (holding that "mere speculation" as to what might have caused the incident was insufficient to show proximate cause or to withstand summary judgment where surviving driver had no memory of the incident or events leading up to it, and there was no accident reconstruction evidence or expert testimony offered to prove the cause of the incident). Accordingly, we conclude that the trial court erred in granting summary judgment to DOT on the Munros' claim for negligent inspection or maintenance. See, e.g., *Spires v. Thomas*, 362 Ga. App. 344, 349-350 (2) (866 SE2d 856) (2021).

2. In many cases decided by this Court, including one decided in 2023, this Court has set forth the following concept:

> The four elements to any tort action are a duty, a breach of that duty, causation and damages. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, *or the probabilities are at best evenly balanced*, it becomes the duty of the court to grant summary judgment for the defendant.

(Citations and punctuation omitted; emphasis supplied.) *Ovation Condo. Assn. v. Cox*, 369 Ga. App. 481, 485 (893 SE2d 867) (2023). See also *Pontoo v. Pinson*, 375 Ga. App. 25, 27 (1) (a) (914 SE2d 448) (2025). Cf. *Anneewakee, Inc. v. Hall*, 196 Ga. App. 365, 367 (396 SE2d 9) (1990) ("when the matter [of causation] remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant"), quoting Prosser and Keaton on Torts § 41, p. 269 (5th ed. 1984). Indeed, in its response brief to this Court, urging us to affirm the trial court's grant of summary judgment, DOT quoted this very

language from *Cox*. The Munros ask that we consider disapproving the language referencing *evenly balanced probabilities* because it "places the trial judge in the position of weighing the nonmovant's evidence with conflicting evidence from the moving party to determine whether a plaintiff has met a preponderance of the evidence standard." Pretermitting whether the Munros are correct, and whether we should consider this "argument," given our above ruling reversing the grant of summary judgment to DOT on other grounds, we decline this invitation. See, e.g., *In re Whittle*, 339 Ga. App. 83, 84, n.2 (793 SE2d 123) (2016) ("we do not consider an expansion of arguments contained in a reply brief").

*Judgment reversed. Barnes, P. J., and Davis, J., concur.*